384 So.2d 359 (1980)
STATE of Louisiana
v.
Marlin ZIELMAN and Michael Zielman.
No. 66330.
Supreme Court of Louisiana.
May 19, 1980.
Rehearing Denied June 23, 1980.
*361 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals, Asst. Dist. Atty., for plaintiff-respondent.
Anderson, Toledano & Courtney, Rykert O. Toledano, Jr., John A. Cvejanovich, Covington, for defendant-relator.
DIXON, Chief Justice.[*]
Marlin and Michael Zielman were charged by bill of information with possession of marijuana with intent to distribute in violation of R.S. 40:966. The defendants filed a motion to suppress evidence and oral statements, which was denied by the trial court. This court granted writs to review that denial.
The incident from which the charges against the defendants arose occurred in the early morning hours of December 26, 1978. At that time the defendants were traveling through St. Tammany Parish on Louisiana Highway 41. At approximately 5:45 a. m. the defendants, driving a dark blue van, stopped at Jim's Feed Store to purchase gasoline, but found the store closed. They were observed by Mark Simon whose family runs Simon's Gulf Station, located a short distance down the highway from Jim's Feed Store. Mark had his father call the St. Tammany Sheriff's office to report the presence of the van at the feed store. The defendants left Jim's and proceeded down the highway to the Simon station, where they remained twenty or thirty minutes waiting for the station to open. When the station failed to open at 6:00 a. m. as indicated on its door, they continued down Highway 41 to Po Boy's Service Station. Simon called the sheriff's office and reported that the van had left the Simon station and proceeded down the highway.
The defendants were at the Po-Boy gasoline pumps when the police arrived. Marlin was outside the van, while Michael was inside. The record indicates that one marked police car pulled up behind the van, while another parked in front or to the side, thus effectively blocking the van's egress. Both cars had their flashing lights on, and, in addition, the driver of the car to the rear switched his spotlight on the van. Sergeant Casnave asked defendants for identification, interrogated them, and radioed for a computer check on the van. He testified that the defendants were not free to leave. Casnave said that he then looked through the windshield of the van and saw several sacks in the back. He inquired as to their contents and was told that they contained sawdust. Casnave asked if he could look into the van, whereupon Marlin Zielman walked to the front of the van, got the key from the ignition, and opened the rear door. Casnave testified that when the door was opened he saw a "vegetable type object" lying on the back floorboard.
The defendants were then told that they were under arrest, and the van was moved to another parking lot and searched. Some 3800 pounds of marijuana were seized.
Marlin Zielman testified that while the van was being filled with gasoline one police car pulled in front and another in the rear. The officers got out and Casnave attempted to see into the van through the windows but was unable to do so. After being told by Casnave that there were reports of a burglary at the feed store, Marlin assured the officer that the van did not *362 contain stolen property. Casnave stated that he wanted to look inside the van. Marlin replied that the van was locked. The officer insisted and again Marlin replied that the van was locked. Marlin testified that the officer then ordered him to get the key and that he felt that he had no choice but to obey. He got the key and opened the rear door. Casnave looked into the van with his flashlight but still could not make out the contents which were covered by sleeping bags. He reached in and attempted to lift one of the sleeping bags, at which point Marlin took hold of his hand and pulled it out of the van, and closed the door. He told the officer that he would have to get a warrant.
Casnave then called Marlin a dumb "son of a bitch" and told him that they would have "to do it the hard way." He then ordered the brothers to get into the van and follow him. Further search and interrogation followed.
The justification advanced by the state for the warrantless search of the defendants' van was Marlin's compliance with Casnave's instructions to open the rear of the van, interpreted as consent. In arguing that the officers acted properly in their approach and investigation of defendants, the state cites State v. Shy, 373 So.2d 145 (La.1979), in which this court stated that police officers "do not need probable cause to arrest or reasonable cause to detain each time they attempt to converse with a citizen. The mere fact that the police approach a citizen and address him does not compel that citizen to respond to the inquiries or comply with their requests; legally, nothing prevents his choosing not to answer and walking away." 373 So.2d at 147. See also State v. Neyrey, 383 So.2d 1222 (La.1979). If, then, the officers in approaching the defendants were merely instituting a non-custodial encounter, which the defendants were free to avoid or terminate by driving away, the consent given by Marlin would be untainted by any prior police impropriety.
The record indicates however that the defendants, while stopped to get some gasoline, were virtually surrounded by police officers in marked patrol cars. One car pulled in behind the defendants' vehicle while another came to a stop in front or to the side. Both patrol cars had their lights flashing; in addition, the driver of the patrol car to the rear fixed a powerful spotlight on the van. Sergeant Casnave, the ranking officer on the scene, testified that the defendants were not free to go and that they were being detained. Under the circumstances, the defendants could not reasonably have believed that they were free to avoid or terminate the encounter by driving away, nor could they have in fact done so without risking a dangerous confrontation with the armed officers. The actions of the officers clearly amounted to much more than an effort to simply "converse with a citizen." State v. Shy, supra. Those actions amounted to an effort to inhibit the defendants' freedom of movement and, from the circumstances, appear to have been designed for the very purpose of preventing the defendants from avoiding the officers by driving away.
When the officers took the actions described above, the defendants were in fact placed under arrest. The statutory definition of arrest in Louisiana is keyed to the concept of restraint. C.Cr.P. 201 provides:
"Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him."
This court has held that the circumstances indicating an intent to effect a restraint on the liberty of a suspect, and the actual restraint determine when an arrest has been made. State v. Tomasetti, 381 So.2d 420 (La.1980); State v. Mendoza, 376 So.2d 139 (La.1979); State v. Rawls, 376 So.2d 117 (La.1979). The circumstances here show that when the officers pulled into the gas station with lights flashing and began to question the defendants, they had the intent to effect such a restraint of the defendants until they determined whether the *363 defendants had been engaged in any wrongdoing. Therefore, the defendants were under arrest prior to the time the "consent" to search the van was given.
A warrantless arrest must be based on probable cause. State v. Tomasetti, supra; State v. Mendoza, supra. Probable cause to arrest exists when facts and circumstances within the officer's knowledge and of which he has reasonable information are sufficient to justify a man of average caution in believing that the person to be arrested has committed or is committing an offense. State v. Tomasetti, supra; State v. Simms, 381 So.2d 472 (La.1979). In the instant case the officers did not have probable cause to arrest the defendants prior to the discovery of the marijuana. The police claimed that they were checking out "suspicious" vehicles in the vicinity of businesses that had been burglarized in the past, but there were no facts known to the officers that would have indicated to a man of average caution that the defendants were engaged in illegal activity. In fact, the officers were not aware of any particular instance in which the businesses in the area had been broken into. Because the defendants' course of conduct prior to being arrested was entirely consistent with innocent pursuits, the officers' knowledge of those actions did not constitute probable cause to believe that the defendants had been engaged in criminal activity.
The issue then presented is whether the illegality of the arrest so tainted the consent that was later given by Marlin Zielman as to require the suppression of the evidence seized in the search pursuant to that consent. We conclude that it did. Such a consent to search, even if voluntary, is valid when made after an illegal detention only when made under circumstances which show no exploitation of the illegality. State v. Mitchell, 360 So.2d 189, 191 (La. 1978); State v. Baker, 338 So.2d 1372 (La. 1976). In State v. Mitchell, this court stated:
"In these circumstances, in determining whether evidence should be suppressed, the issue is whether the defendant's postarrest act (here, his consent) was the product of his free will rather than the result of an exploitation of his illegal arrest. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In deciding this issue, the court should take into account not only whether the governmental officers adequately informed the accused that he need not comply with their request, but also the temporal proximity between the arrest and the act (consent) alleged to be coerced, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. Brown v. Illinois, at 422 U.S. 603-04, 95 S.Ct. 2261-62."
In the instant case the consent was inextricably linked to the initial illegal arrest. The consent occurred at the scene of the arrest shortly after the arrest took place. The defendants were not informed of their right to refuse consent. The record discloses no intervening circumstances between the arrest and the consent. The officers' actions amounted to a clear violation of the right to be left alone and to be free from unwarranted police interference. The officers undertook to restrain the defendants and to question them while under restraint for no better reason than that there allegedly had been, at some unknown time in the past, burglaries in the area. In light of the factors just reviewed the consent to search must be considered to have been obtained as a result of the exploitation of the original illegal arrest. Since the warrantless search of the defendants' van is not supported by any grounds apart from that invalid consent, the evidence obtained through that search should have been suppressed by the trial court.
The record indicates that at the time that he was formally told that he was under arrest, Michael Zielman was searched and found to have in his possession a "small quantity of marijuana." The only possible justification that appears from the record for that search was that it was incident to the arrest. At the time of the search, however, the officers had no evidence, legally obtained, that indicated that Michael Zielman *364 had engaged in criminal behavior. As noted above, the initial arrest was not justified by probable cause. The officers' action in formally placing the defendants under arrest was based on the illegal discovery of the marijuana, and for that reason cannot be considered a valid arrest. The search of the person, therefore, was not justified as incident to a valid arrest, and the evidence obtained by the search should have been suppressed by the trial court. State v. Mendoza, supra.
The admissibility of the oral statements made by the defendants must be determined under much the same analysis that was used in determining if the consent was valid. In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the United States Supreme Court held that confessions, as well as physical evidence, obtained as a direct result of an arrest unsupported by probable cause must be suppressed. In Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the United States Supreme Court held that Miranda warnings alone do not make a confession following an illegal detention sufficiently a product of free will so as to break the causal connection between the illegality and the confession. The court enumerated the factors listed by this court in State v. Mitchell, supra, as relevant in determining if an oral statement was obtained by exploitation of the illegal arrest. Therefore, the length of time between the statement and the arrest, the presence of intervening circumstances and the purpose and flagrancy of police conduct, as well as the Miranda warnings, must be considered in determining if the confession was so attenuated that it should not be considered a fruit of the illegal arrest. State v. Giovanni, 375 So.2d 1360 (La.1979); State v. Grogan, 373 So.2d 1300 (La.1979); State v. Scott, 355 So.2d 231 (La.1977).
The record indicates that the defendants were given their Miranda warnings after the marijuana was found in the van and they were told they were under arrest. It further indicates that while Sergeant Casnave was searching the van, Marlin Zielman made a statement indicating that all of the sacks in the van contained marijuana. Marlin also stated, according to the police officers, that he had been paid money to drive the van to Michigan and leave it in a parking lot. He also allegedly offered the officers the van and its contents, along with all the money in his possession, if they would let him go. The defendants were then transported to the sheriff's office in Slidell where, according to the state's answer to the defendants' motion for discovery, Michael Zielman made a statement to Sergeant Hermann to the effect that he had been paid to drive the van to Michigan and leave it in a parking lot where it would be picked up by unknown persons. These statements, as well as the consent to search the van, were obtained by exploitation of the illegal arrest.
In this case, the defendants were initially approached by the officers at around 6:00 a. m. The defendants arrived at the sheriff's office where Michael Zielman made his statement to Sergeant Hermann by 7:00 a. m. or shortly thereafter. The statements were made in close temporal proximity to the illegal arrest and subsequent invalid search, without any intervening circumstances that would indicate that the statements were an exercise of the defendants' free will. The arrest of the defendants and the search of the van were made in clear violation of the defendants' rights and were unjustified by any activities on the part of the defendants. The statements made by the defendants were obviously made in response to the fact that the officers had obtained (illegally) evidence that could be used against them. The statements, made soon after the unjustified arrest, must be considered the fruits of the initial illegal detention and subsequent invalid search, and therefore the statements should have been suppressed by the trial court.
For the reasons assigned, the trial court's judgment on the motion to suppress is reversed, and the motion is sustained; the case is remanded to the trial court for further proceedings.
BLANCHE, J., concurs and assigns reasons.
*365 MARCUS, J., dissents and assigns reasons.
EDWARD A. de la HOUSSAYE, III, J. Ad Hoc dissented and separately assigned reasons.
MARCUS, Justice (dissenting).
I agree that the actions of the police officers amounted to more than an effort simply to "converse with a citizen." On the other hand, I do not agree that the officers had placed defendants under arrest. Rather, I consider that they, having reasonably suspected defendants of possible criminal conduct, were momentarily detaining them to seek their names, addresses and explanation for their actions. La.Code Crim.P. art. 215.1. Hence, the subsequent consent to search the vehicle was valid and the inculpatory statements were legally obtained. Accordingly, I respectfully dissent.
BLANCHE, Justice (concurring).
A "strange" vehicle, a van, was seen waiting for a gas station to open in a rural area. As the photographs in the record depict, it was just an ordinary van. No evidence was introduced in this record concerning previous burglaries, which was the purported basis of the officers' so-called "suspicions". Even so, people driving vans in small towns or communities have a right to be left alone in the absence of some valid probable cause. Having failed to convince me of their suspicions so as to even talk to defendants, I am not too impressed with the state's claim of consent. Here is a case of police interference with two persons whose conduct was entirely innocent and was, therefore, unwarranted.
The lingo for such conduct is called "hassling".
EDWARD A. de la HOUSSAYE, III, Justice Ad Hoc (dissenting).
I respectfully dissent from the majority opinion.
At issue in this case is the right of the police to question defendants concerning their activities in the area of Jim's Feed Store and Simon's Gulf Station. The right of the police to temporarily detain a suspect for investigatory purposes exists only when the officer has reasonable cause to believe that the suspect is committing, has committed, or is about to commit a crime. La.C. Cr.P. Art. 215.1(A). The officer has to have adequate articulable knowledge of particular facts, enough to warrant infringement upon the individual's constitutional right to be let alone. State v. Neyrey, 383 So.2d 1222 (La.1979); State v. Shy, 373 So.2d 145 (La.1979); State v. Wilson, 366 So.2d 1328 (La.1978).
In the instant case, the police officers did not have an adequate basis for a reasonable belief that defendants were engaged in criminal activity. Police, therefore, would not have been justified in temporarily detaining defendants. However, police officers do not need probable cause to arrest, or reasonable cause to detain, in order to talk with a citizen. State v. Neyrey, supra; State v. Shy, supra, at 147. The mere fact that a police officer approaches a citizen and addresses him or her does not compel that citizen to respond. Legally, a citizen may walk away or not respond. State v. Neyrey, supra; State v. Shy, supra; State v. Brown, 370 So.2d 547 (La.1979).
In the case at bar, the police were responding to a call indicating that individuals were engaged in suspicious activity in an area which had been the scene of crimes in the past. There is no doubt that these officers had the right, as well as the duty, to check out this report. When the police units drove up to defendants' van, defendants had the right to drive away. The defense has asserted that the form of approach taken by the officers indicated that some form of detention was imminent. See State v. Chopin, 372 So.2d 1222 (La.1979); State v. Saia, 302 So.2d 869 (La.1974). Evidence exists in the record, however, to reasonably support the trial court's apparent conclusion that defendants should not have feared detention. There is testimony which indicated that Officer Casnave pulled in behind defendants' van and Deputy Waldron pulled in alongside him. The testimony seemed uncontroverted that it was still *366 dark at that time and the fact that a searchlight was turned on defendants may have been merely for the convenience of all of the parties involved in the incident. The Police officers were justified in approaching defendants to ask them some questions.[1]
The search of defendants' van was conducted without a search warrant. Warrantless searches and seizures are per se unreasonable under the Fourth Amendment of the United States Constitution and Article 1, Section Five of the Louisiana Constitution of 1974, unless they fall within the scope of a limited number of exceptions to the warrant requirement. The exception to the warrant requirement when consent to search is given is applicable to the case at bar.[2] A search conducted pursuant to a valid consent is constitutional. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Johnson, 380 So.2d 32 (La.1980); State v. Linkletter, 343 So.2d 452 (La.1977). To determine whether or not consent was voluntary, the facts and circumstances of each case must be analyzed. Schneckloth v. Bustamonte, supra; State v. Johnson, supra.
There were two searches of defendants' van, both of which the state contends were conducted with the consent of defendants. The first search was conducted at the pumps of the Po-Boy Service Station and the second one was conducted in the parking lot of the Po-Boy Supermarket. There is evidence in the record from which a reasonable trier of fact could conclude that valid consent was given to both searches. It should be noted that defendants were placed under arrest after the first search, and therefore, were in custody at the time of the second search. The fact that a defendant is in custody is a factor to be considered in determining the voluntariness of a defendant's consent. The test is whether the police took unlawful advantage of the arrest or used coercive tactics in order to obtain consent. See State v. Johnson, supra. At the hearing, Officer Casnave testified that such tactics were not used in this case. Furthermore, consent can be given to search a vehicle already impounded by police officers. State v. Linkletter, supra.
The second search of the van fell into the "automobile emergency" exception to the warrant requirement. Because of the mobility and imminent disappearance of automobiles, a warrantless search of the vehicles may be justified by necessity. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Lewis, 378 So.2d 396 (La.1979). There are two requirements which must be met before a warrantless search based on this exception will be upheld: (1) there must be probable cause to believe the vehicle contained contraband or evidence of a crime and (2) there must be exigent circumstances requiring a warrantless search, i. e. a possibility that the car would be moved by someone while the officers were obtaining a warrant. Chambers v. Maroney, supra. In the instant case, probable cause existed for the officers to believe the vehicle contained contraband: they had already viewed the marijuana in the van. The defense argues that the requisite exigent circumstances were not present, because once the defendants had been arrested, no evidence could have been removed from the vehicle. Defendants' argument is without merit. The search in the Po-Boy Supermarket parking lot was conducted pursuant to a valid exception to the warrant requirement.
The trial court did not abuse its discretion in finding that defendants had consented to the searches of their vehicle.
NOTES
[*] Honorable EDWARD A. de la HOUSSAYE, III participated in this decision as an Associate Justice Ad Hoc.
[1] Once again, it is noted that defendants would have been equally justified in refusing to answer any questions.
[2] Although Officer Casnave testified that he did see the bags in the back of the van through the front, the "plain view" exception is not applicable here. Officer Casnave saw plastic bags in the van, which are not clearly contraband. See State v. Pomes, 376 So.2d 133 (La.1979).