SAVOIE, Judge.
William A. Gorut was charged by bill of information with possession in excess of 400 grams of cocaine, a violation of La.R.S. 40:967 F. He initially pled not guilty and filed pre-trial motions, including motions to suppress physical evidence and a confession. Following a hearing, the trial court denied the motions. Subsequently, defendant withdrew his not guilty plea and entered a guilty plea, reserving his right to appeal the denial of the motions to suppress under State v. Crosby, 338 So.2d 584 (La.1976).[1] Defendant was sentenced to fifteen years at hard labor, without benefit of probation, parole or suspension of sentence, with credit for time served. He now appeals, urging as his sole assignment of error, the denial of his motions to suppress.
The facts of this case are taken from the testimony at the motion to suppress hearing. At approximately 12:45 p.m. on September 11,1986, three uniformed Louisiana state police troopers were traveling west on 1-12 in St. Tammany Parish, when the driver, Trooper Phillip Stanford, clocked defendant speeding. The troopers stopped defendant between Covington and Mande-ville. Trooper Stanford exited the vehicle and approached defendant; Sgt. Charles Chapman and Trooper Dykes stayed in the police vehicle. Trooper Stanford asked defendant where he was employed, his origination and his destination. Defendant, who spoke with a strong foreign accent, said that he was unemployed, that he was coming from Louisiana and going to Baton Rouge. He also stated that the vehicle, bearing a Florida license plate, belonged to his wife; but he could not remember his *1270 wife’s name. Trooper Stanford became suspicious during the conversation because defendant’s answers were evasive. The trooper advised defendant that there were circumstances that made him suspicious and requested defendant’s consent to search the vehicle. Defendant stated that he had “nothing to hide”, agreed to the search, signed the consent to search form, and stated he would open the trunk for the trooper.
When the trunk was opened, the trooper noticed that the carpet had been glued down tightly with an excessive amount of glue. The trooper was unable to lift the carpet, and the trunk appeared to be modified and elevated. Also, hollow sounds could be heard when the trunk was tapped. Trooper Stanford requested a drug detector dog be sent to the location; however, the dog did not alert when it sniffed the inside and outside of the vehicle. A cursory search of the vehicle did not reveal any contraband. Nonetheless, Trooper Stanford was still suspicious and asked defendant to accompany the troopers to the nearby troop headquarters because he believed there was something wrong with the trunk. Defendant agreed, “if it did not take too long.” Defendant drove his own vehicle to the troop headquarters, led by Trooper Stanford’s vehicle and followed by another state trooper’s vehicle which had also arrived at the scene.
At the headquarters, the vehicle was put on a rack and the troopers noticed shiny scratches and fresh undercoating on the gas tank. It also appeared that the gas tank had been altered. A metal flap was removed and the trooper observed several packages inside a false compartment. The packages were removed and a white substance, thought to be cocaine, was discovered in them; lab reports later confirmed this substance to be cocaine.
Defendant was arrested and given his Miranda rights. Defendant signed a waiver of rights form and gave a statement to the troopers that he was delivering contraband to Texas for a fee. He indicated that he wanted to “make a deal.” Defendant also made several admissions to Trooper Graham, a narcotics investigator with the state police. Trooper Graham testified that defendant stated he had a failing business in South America and agreed to deliver contraband to Houston for a fee. He asked the trooper to allow him to continue to travel to Houston and to arrest him in Texas so that his principals would not know that he had been stopped in Louisiana. Defendant further explained that he was worried about a daughter who was being kept by a friend in Miami.
At the hearing on the motion to suppress, Trooper Stanford first stated that defendant was free at any point to leave if he chose to leave and that the request to drive to the troop headquarters was “strictly voluntary.” However, he admitted they “were going to check the car.” Sgt. Chapman testified that he and Trooper Dykes only walked up to defendant after defendant had signed the consent to search form. Sgt. Chapman further stated that if defendant had tried to leave after agreeing to travel to the troop headquarters, he would have been stopped from doing so. Also, he admitted that Trooper Stanford had possession of defendant’s driver’s license and had not yet issued defendant a ticket when they left the interstate to travel to the troop headquarters.
Trooper Graham denied that he had trouble understanding defendant. He admitted that he explained to defendant about a statute that allows the sentencing court to consider suspending or reducing the sentence for those convicted of this charge but denied coercing defendant. Both Troopers Graham and Stanford denied that defendant requested an attorney during questioning. Trooper Stanford also testified that they did not obtain a search warrant because they had consent from defendant.
The trial court, in denying defendant’s motions to suppress, stated that the search was a “legitimate automobile seizure and search under probable cause to believe contraband existed” within the vehicle.
By his sole assignment of error, defendant argues that the search of his vehicle was invalid and that defendant’s statements were inadmissible as they were fruits of the illegal search.
*1271 He specifically argues that, since the trial court upheld the search based upon a finding of probable cause, this Court may not affirm the trial court’s ruling based upon a finding of valid consent by defendant. He further argues that probable cause did not exist for the warrantless search and that, under the circumstances, defendant did not consent. Also, defendant concedes that the troopers’ original suspicion after the initial stop justified a brief detention and that defendant’s original permission to search the car was voluntary; however, he argues that, after nothing was found when the vehicle was searched by the drug detector dog, the detention was illegal and the seizure should have concluded. The state argues that the search of the vehicle, after the negative response by the drug detector dog, was valid based upon reasonable suspicion and defendant’s consent.
Initially, we note that defendant infers in brief that, because the trial court did not address the issue of consent in its reasons, the trial court rejected this exception as a basis for the search. Defendant further contends that this Court may not affirm the trial court’s ruling based upon reasons other than those given by the trial court (such as a finding of consent). Defendant cites no authority for his proposition, and we disagree with his argument.
A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). A search conducted with the subject’s consent is a specifically established exception to both the warrant and probable cause requirements. When the state seeks to rely upon consent to justify a warrantless search, it also must demonstrate that the consent was freely and voluntarily given without coercion. State v. Peters, 546 So.2d 829, 831 (La.App. 1st Cir.), writ denied, 552 So.2d 378 (La. 1989). The voluntariness of defendant’s consent to search is a question of fact to be determined by the trial court under the facts and circumstances surrounding each case. State v. Wright, 441 So.2d 1301, 1304 (La.App. 1st Cir.1983).
In brief, defendant relies heavily on the cases of State v. Zielman, 384 So.2d 359 (La.1980), and State v. Bunnell, 517 So.2d 439 (La.App. 1st Cir.1987), for the proposition that the detention herein, after the search by the drug detection dog, was illegal.
In Zielman, 384 So.2d at 363, the Louisiana Supreme Court held that the circumstances indicated that defendants therein were under arrest prior to the time the consent to search their vehicle was given. That Court further concluded that the war-rantless arrests were without probable cause and, thus, illegal. Moreover, Ziel-man held that the consent was obtained as a result of the exploitation of the original illegal arrest.
In Bunnell, defendant was stopped for an alleged speeding violation. This Court concluded that Bunnell’s approximate thirty minute detention for a minor traffic violation exceeded the permissible limits therefor. In finding that the detention was illegal, we stated:
Robertson [the state trooper] acknowledged that he did not focus his attention on issuance of the traffic citation immediately after the stop. Rather, because of a generalized suspicion or hunch, he extended the period of detention well beyond the time needed to investigate a minor traffic violation. There were no facts known to Robertson that would have indicated to a man of average reason that Bunnell was engaged in illegal activity. This period of detention was for the express and sole purpose of obtaining a consent to search from defendant. State v. Bunnell, 517 So.2d at 441.
Although we do not quarrel with the holding in Zielman or in Bunnell, defendant’s reliance on those cases is misplaced. Herein, the facts give rise to a reasonable belief that defendant was engaged in illegal activity. Defendant could not state his wife’s name after he answered that she owned the vehicle. Furthermore, the vehicle’s trunk appeared altered; and the carpet had apparently been glued down to the extent that it could not be raised. These facts could suggest criminal activity *1272 far more serious than a mere speeding violation, which was the reason for the initial stop herein and in Bunnell. Moreover, we do not find that defendant’s consent was inextricably linked to an illegal arrest.
Furthermore, the record indicates that defendant voluntarily consented to travel to the troop headquarters after the troopers told defendant they continued to be suspicious about the vehicle. Defendant drove his own vehicle to the station. The record also indicates that defendant was not threatened or coerced in any way. Moreover, the testifying troopers stated that they made an effort not to “crowd” or intimidate defendant while they were stopped on the interstate. Based upon the circumstances, we find that defendant voluntarily consented to the search of his vehicle at troop headquarters. Thus, the automobile search and subsequent seizure of the contraband was valid. Moreover, defendant’s admissions were not a result of an illegal search.
This assignment of error lacks merit and accordingly we affirm defendant’s conviction.
CONVICTION AFFIRMED.

. The record indicates that prior to his guilty plea, a trial of defendant actually began; voir dire questioning of prospective jurors was conducted, and a jury was selected. However, on the second day of trial, prior to opening statements, defendant failed to appear. The trial court declared a mistrial. Subsequently, defendant appeared in court and pled guilty to the possession of cocaine charge. Thereafter, at the sentencing, he filed a motion to withdraw his guilty plea, requesting that he be allowed to enter a Crosby plea and reserve his right to appeal pre-trial errors, since his initial guilty plea was not entered as a Crosby plea. The state did not object to defendant’s request to enter a qualified guilty plea; the trial court allowed defendant to enter a Crosby plea.