884 So.2d 1176 (2004)
STATE of Louisiana
v.
Julian Christian LONG.
No. 2003-KK-2592.
Supreme Court of Louisiana.
September 9, 2004.
Rehearing Denied November 24, 2004.
*1177 McGlynn, Glisson & Koch, Karl J. Koch, Baton Rouge, Marcia S. Koch, for Applicant.
Charles C. Foti, Jr., Attorney General, Douglas P. Moreau, District Attorney, Jeanne G. Rougeau, Assistant District Attorney, for Respondent.
VICTORY, J.[*]
This case elicits as its primary issues both the relevancy of the exclusionary rule when the police are in possession of a valid search warrant and the discretion a trial judge is afforded in ruling on a motion to suppress evidence. After a close examination of the record and a thorough review of applicable law, we find that the exclusionary rule such as was formulated in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and its progeny was not triggered when a law enforcement officer executed a valid search warrant upon which he reasonably relied. Additionally, we find that the trial judge abused his discretion in suppressing evidence that was obtained by a search conducted without a warrant, pursuant to the "automobile exception."

FACTS AND PROCEDURAL HISTORY
In March 2001, Officer Dennis Smith of the Baton Rouge Police Department was contacted by a confidential informant *1178 ("CI") with information that the defendant, Julian Long, and his roommate, John Haarala, were trafficking large amounts of marijuana from Texas to their residence at 541 Castle Kirk Street in Baton Rouge. After receiving this tip, Officer Smith placed the Castle Kirk address under surveillance and seized several bags of garbage from outside of the residence.
Officer Smith prepared a search warrant affidavit based on the information he gathered from his surveillance and examination of the garbage. In his affidavit, Officer Smith stated that the CI "advised that Julian Christian Long and John Haarala were trafficking in marijuana from their residence ... [and] that Long transported large quantities of marijuana from Texas to Louisiana for distribution in the Baton Rouge area, assisted by Haarala." Although the affidavit acknowledged that the "CI could provide no other information," Smith maintained that the "CI is considered reliable based on providing information regarding narcotics trafficking in the Baton Rouge area which affiant knows to be true and correct."
Officer Smith further stated in his affidavit that he "is familiar with Long and has in the past received information from two independent sources identifying Long as a person involved in the transportation and trafficking of marijuana." The affidavit did not contain further information regarding either the officer's familiarity with the defendant or the basis for the information supplied by the two unidentified sources. Officer Smith conducted surveillance on the residence on several occasions and confirmed that the defendant and Haarala resided there and that vehicles registered to the two men were located in front of the home.
Officer Smith also included in his affidavit the fact that he had seized from the defendant's garbage the stem of what he believed to be a cured marijuana plant.[1] He further stated he had retrieved from the garbage an empty box of gallon-sized plastic bags, which he knew from experience were often utilized by traffickers in the packaging of large quantities of marijuana, as well as two prescriptions for medication with co-defendant Haarala's name on them.
After review of the affidavit by a magistrate, a search warrant was issued for the Castle Kirk address. Before he executed the search warrant, however, Officer Smith observed a male individual arrive at the residence in a maroon Ford truck. Officer Smith recognized the man as Kevin Francis, who had been described by the unidentified CI as an associate of the defendant. Believing that Francis may have obtained marijuana from the residence, Officer Smith ordered two other officers to initiate contact with Francis after he returned to his residence and exited his vehicle. When Francis exited his vehicle, he was advised of the investigation and read his Miranda rights, which Francis stated that he understood. The officers then asked Francis whether he had any marijuana, to which Francis admitted that he had three pounds hidden in a brown paper bag on the rear passenger floorboard of his vehicle.[2] After a search of the vehicle *1179 revealed three pounds of marijuana packaged in gallon-sized "Ziploc" bags, Francis divulged that he had obtained the marijuana from the defendant, Long.
After the search of Francis, Officer Smith directed the agents who were still at the Castle Kirk address to execute the search warrant on the defendant's residence. When Officer Smith arrived back at the residence, he observed that a large quantity of marijuana had been found, which was later determined to be twenty pounds. The officers also found a digital scale holding a gallon-sized "Ziploc" bag filled with marijuana and two large black duffel bags filled with approximately sixteen pounds of marijuana. The defendant was advised of his Miranda rights and indicated that he understood them. He told Officer Smith that the marijuana belonged to him, and he directed them to a backpack and a computer desk that contained more marijuana. The officers also seized approximately $1,050 in cash from the defendant's pants pocket and approximately $660 from Haarala's bedroom.[3]
The defendant was charged by Bill of Information with "Possession with Intent to Distribute Marijuana" and "Possession of a Firearm with a Controlled Dangerous Substance," and thereafter moved to suppress the evidence seized from his residence on the basis that probable cause had not been established in the search warrant affidavit. The defendant also moved to suppress the evidence seized from the Francis vehicle on the basis that the automobile exception to the warrant requirement did not justify the stop and warrantless search of the vehicle.
The district court granted the defendant's motion to suppress the evidence seized from Long's residence, as well as the evidence seized from the vehicle belonging to Francis. A two-to-one majority of the court of appeal panel granted the State's writ application and reversed, finding that Officer Smith's familiarity with the defendant, the information received from the CI who had provided reliable information in the past, the information collected from the two independent sources, and the items collected from the residential garbage established a substantial basis for the magistrate to find that probable cause existed. State v. Long, ___ So.2d ___, 03-1060 (La.App. 1 Cir. 8/11/03). As to the evidence seized from the Francis vehicle, the appellate court simply stated that the evidence was admissible under the automobile exception to the warrant requirement. From this ruling we granted the defendant's writ application. State v. Long, 03-2592 (La.1/30/04), 864 So.2d 638.

LAW AND ANALYSIS

Search of 541 Castle Kirk
Trial courts are vested with great discretion when ruling on a motion to suppress. Consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. See State v. Horton, 01-2529 (La.6/21/02), 820 So.2d 556, 561. Ultimately, however, the appellate courts must determine whether the district court did, in fact, abuse its discretion. In the first issue presented to this Court in the case sub judice, the trial court suppressed the evidence obtained during a search of the defendant's *1180 home. In the hearing on the motion to suppress, the defendant argued that the information contained in the affidavit was merely conclusory, because it did not provide any basis for determining the veracity and reliability of the CI. The defendant points out that there was no information provided as to how the informant obtained his knowledge regarding the defendant's drug-related activities, or as to when the said activities may have occurred. Additionally, he argues that the information provided by the CI remained uncorroborated when the warrant was issued. We find these arguments unpersuasive and find that the correct standard of review was not applied by the district court in its review of the magistrate's determination of probable cause.
When evaluating whether probable cause exists for the issuance of a warrant, the United States Supreme Court has explained that
the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclud[ing]' [citations omitted] that probable cause existed.
Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).
Following this line of reasoning, the Court in Gates decided that a magistrate should examine the "totality of circumstances" that are presented to him in the affidavit by the officer when determining if a Fourth Amendment violation has occurred. Id., 462 U.S. at 230-231, 103 S.Ct. at 2328. For the following reasons, however, we need not reach a "totality of the circumstances" examination to determine the existence of probable cause.
The United States Supreme Court has held that evidence seized pursuant to a warrant based on less than probable cause need not be suppressed if the officers who executed the warrant believed it to be validly issued. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[4] In Leon, the Court evaluated the costs and benefits of suppressing "reliable physical evidence seized by officers reasonably relying of a warrant issued by a detached and neutral magistrate" and found that "such evidence should be admissible in the prosecution's case in chief." Id., 468 U.S. at 913, 104 S.Ct. at 3415. In formulating this judicially created good faith rule, the Court reasoned that the good faith of an officer in the execution of a warrant signed by a neutral magistrate should be enough for the evidence obtained as a result of the search to be admissible. Id. Thus, the Court expressed a strong preference for warrants over warrantless searches by allowing evidence seized in constitutionally questionable searches to be admissible into evidence if the officers were relying on a validly issued warrant.
The Supreme Court justified the creation of a good faith rule by explaining that a search warrant provides a neutral and detached analysis of probable cause by a magistrate rather than the "hurried judgment of a law enforcement officer," and thus should be entitled to reliance by the executing officer. Id., 468 U.S. at 914, 104 S.Ct. at 3416. Following along these *1181 lines, this Court addressed the good faith rule in State v. Varnado. 95-3127 (La.5/31/96), 675 So.2d 268, 270. In this case we explained that:
[t]he exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, 468 U.S. at 916, 104 S.Ct. at 3417. Its application therefore "must be carefully limited to the circumstances in which it will pay its way by deterring official lawlessness." Id., 468 U.S. at 907 n. 6, 104 S.Ct. at 3412 (quoting Illinois v. Gates, 462 U.S. at 257-58, 103 S.Ct. at 2342 (White, J. concurring in judgment)). As a general rule, "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Leon, 468 U.S. at 916, 104 S.Ct. at 3417.
Varnado, 675 So.2d at 270. However, we also have ruled that a law enforcement officer's reliance on a magistrate's determination of probable cause is not boundless. In State v. Horton, 01-2529 (La.6/21/02), 820 So.2d 556, this Court, citing Leon, decided that suppression was the appropriate remedy only if:
(1) the affiant misled the magistrate by including in the affidavit misleading statements which the affiant knew were false or would have known were false, except for reckless disregard for the truth; (2) the magistrate abandoned his neutral and detached role; (3) the affiant was so lacking of indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was deficient and could not be presumed valid. 468 U.S. at 914-914, 104 S.Ct. at 3405.
Applying these factors to the current case, we find that the record contains no evidence of any misleading statements that were contained in the affidavit presented to the magistrate. Additionally, there was no evidence that the issuing magistrate abandoned his neutral role in his issuance of the search warrant, nor was there on the face of the warrant anything that would make the warrant so deficient that it could not be presumed valid. Thus, in order for the exclusionary rule to be the proper remedial mechanism in the case sub judice, the affidavit provided by Officer Smith must have been "so lacking in the indicia of probable cause as to render official belief in its existence entirely unreasonable."
Leon's good faith rule recognizes that "an officer cannot be expected to question the magistrate's probable cause determination," but also presupposes that the police have a "reasonable knowledge of what the law prohibits." Id., 468 U.S. at 919-921, 104 S.Ct. at 3419. It is necessary, then, to examine what information was provided by the officer to the issuing magistrate in order to determine if a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id., 468 U.S. at 922, 104 S.Ct. at 3420.
The instant affidavit stated that the CI's knowledge of defendant's drug-smuggling activities was consistent with what the officer knew of defendant's history through two independent sources. Thus, the affiant had an independent basis for believing the report to be true, and this knowledge corroborated the informant's report and bolstered his reliability. See State v. Dazet, 378 So.2d 1369 (La., 1979). In Illinois v. Gates, the Supreme Court determined that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause" and that "his actions cannot be a mere ratification of the bare conclusions of others." 462 U.S. at 239, 103 S.Ct. at 2332. Here, the magistrate was provided *1182 with several bases of suspicion, the combination of which provided the magistrate with more than the "bare conclusions of others" from which to determine probable cause. Id. The affiant, after learning of drug trafficking by the defendant from a reliable confidential informant, and already being independently aware of the defendant's involvement in the drug trade, took the initiative to confiscate the defendant's trash in order to look for additional information regarding the defendant's activities. During this search Officer Smith found a portion of a cured marijuana plant of the kind that is bought and sold in the drug trade. Additionally, he found an empty box of large "Ziploc" bags of the type that Officer Smith knew from past experience was used to store marijuana.
As this court stated in Gibson v. State, 99-1730 (La.4/11/00), 758 So.2d 782:
The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence required at trial, and credibility determinations are seldom crucial in deciding whether available evidence supports a reasonable belief that the person to be arrested has committed a crime. Probable cause, as the very name implies, deals with probabilities. The probable cause standard recognizes that a degree of uncertainty may exist and that an officer need not have sufficient proof to convict but must have more than a mere suspicion. The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause. (citations omitted)
Furthermore, in State v. Barrilleaux, this Court decided that there should be "no specific tests to be satisfied by an informant's tip, and the magistrate may issue the warrant when the totality of the circumstances, viewed in a common-sense and non-technical manner, establish `there is a fair possibility that contraband or evidence of a crime will be found in a particular place.'" 620 So.2d 1317, 1320 (La.7/2/93) (citing Gates, 462 U.S. at 239, 103 S.Ct. at 2332 (1983)).
In our case, Officer Smith provided the magistrate with information from a reliable confidential informant as well as his own personal knowledge of the defendant's history with narcotics through two separate informants, who corroborated this information. Additionally, he informed the judge of the marijuana plant stem and empty box of "Ziploc" bags found in the defendant's trash. It cannot be said that when all of these factors are taken together Officer Smith was unreasonable in believing that he was providing the magistrate with sufficient information to issue a warrant.[5] Thus, since the facts do not support that the affiant "was so lacking of indicia of probable cause as to render official belief in its existence entirely unreasonable," the trial court committed reversible error in suppressing the evidence found pursuant to the search warrant of the defendant's home. Leon, 468 U.S. at 914-915, 104 S.Ct. at 3405.

Search of Francis's Vehicle
We turn now to the defendant's argument that the State failed to establish probable cause to search Francis's vehicle. Under the constitution of our state, Long has the standing to challenge the seizure of evidence from Francis insofar as it may have adversely affected him. Article I, Section 5 of the Louisiana Constitution provides: "Any person adversely affected *1183 by a search or seizure conducted in violation of this section shall have standing to raise its illegality in the appropriate court." Thus, since Long is adversely affected by the seizure of evidence from Francis's vehicle, the grounds for having done so may be put at issue in Long's defense. See State v. Culotta, 343 So.2d 977 (La.1976).
Following a Motion to Suppress by Long, the district court excluded the evidence obtained from Francis's vehicle finding insufficient evidence to establish probable cause. In his ruling, the trial judge found that the information provided Officer Smith by the CI plus the mere fact that the Francis vehicle was seen at the Castle Kirk street address was not enough to constitute probable cause for a warrantless search. After a review of the relevant testimony and evidence in this case, we do not find it necessary to make this determination. Rather, we find that the admission of Francis to the officers concerning the presence of marijuana in his vehicle provided them with sufficient probable cause to search his vehicle pursuant to the "automobile exception" to the warrant requirement.[6]
Generally, in order for evidence to be excluded at trial, an illegal search or seizure must have taken place that resulted its discovery. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Applying this to our case, either the custodial arrest of Francis or the search of his vehicle must have taken place on less than probable cause in order for the exclusionary rule to pertain. Since the search of Francis's vehicle occurred subsequent to his informing the officers that he was in possession of marijuana, there must have been a preceding seizure of Francis in order for the subsequent search of his vehicle to be considered to have violated his Fourth Amendment rights. In other words, if Francis was "seized" when the detectives informed him that he was under investigation and given his Miranda warnings, then there is a question of whether probable cause existed to make such an arrest, and the exclusionary rule may apply to the subsequent search of the vehicle.[7] However, if the seizure was not made until after Francis admitted where the marijuana was located, then the search of his vehicle was made subject to probable cause, and the exclusionary rule does not apply.[8] Thus, we must decide at which point Francis was seized for purposes of state and federal law in order to determine whether the product of the vehicle search may be admitted into evidence.
In California v. Hodari D., the United States Supreme Court held that an individual *1184 is not "seized" within the meaning of the Fourth Amendment until that individual either submits to the police show of authority or is physically contacted by the police. 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). This Court has expanded this definition to comport with our law, holding that an individual is "seized" under the Louisiana Constitution when he is either "actually stopped" or when the "actual stop" of the individual is imminent. State v. Tucker, 626 So.2d 707 (La.5/24/93); La. Const. Art. 1, § 5. In Tucker, this Court decided that under Louisiana's slightly broader definition of the term, a "seizure" may occur "when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain." 626 So.2d at 712.
The U.S. Supreme Court addressed a similar, more relevant, issue in Florida v. Bostick, holding that a seizure does not occur simply because an officer approaches an individual and asks a few questions, as long as a reasonable person would feel free to disregard the police and go about his business. 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In this opinion, the Court stated that even when officers have no basis for suspecting a particular individual of criminal activity, they generally may ask questions of that individual as long as the police do not convey the message that compliance with their requests is required. Id., 501 U.S. at 436, 111 S.Ct. at 2386; State v. Sylvester, 01-607 (La.9/20/02), 826 So.2d 1106.[9] The test for whether a "seizure" has occurred, then, "is whether a reasonable person would feel free to decline the officer's request or otherwise terminate the encounter." Bostick, 501 U.S. at 436, 111 S.Ct. at 2386. In deciding what constitutes a "reasonable person," one must look "form the viewpoint of an innocent person in his position." Id., 501 U.S. at 438, 111 S.Ct. at 2388. Accordingly, the question that this Court must address in determining at what point a seizure occurred is at what instant would police conduct have communicated to a reasonable, innocent person that he was not free to decline the officer's request or otherwise terminate the encounter.
The two officers, after following Francis to his residence, approached him, told him that he was under investigation for the distribution of marijuana, and advised him of his rights. There is no evidence of any physical contact between the two officers and Francis, nor did the officers order Francis to submit to any of their commands. However, they did exercise their rights to ask questions of Francis after specifically communicating to him that he was not required to answer them. When asked by the officers if he was transporting any marijuana, Francis admitted that he had marijuana in the back seat of his automobile. Only then did the officers take Francis into custody and search his vehicle, thereby discovering the three pounds of marijuana packaged in gallon-sized "Ziploc" bags.
*1185 Given these facts, based on the relevant federal and state law, we cannot say that the search of Francis's vehicle was the product of an unlawful seizure. When the officers approached the vehicle, a reasonable, innocent person would not believe that he was under arrest. Thus, the admission that Francis had marijuana in his possession was not the fruit of an illegal seizure, but rather it provided the requisite probable cause for the arrest of Francis and search of his vehicle.

CONCLUSION
For the reasons stated above, we find that the trial judge abused his discretion in suppressing evidence obtained pursuant to a properly executed warrant issued by a neutral magistrate. Officer Smith's familiarity with the defendant, the information received from a confidential informant and two independent sources, as well as the items found in the defendant's garbage provided Officer Smith with sufficient grounds to execute the warrant in good faith. Additionally, we find that Francis was not seized when he was approached by two officers, read his Miranda warnings, and informed that he was the subject of an investigation. Being subject to only non-custodial questioning, Francis provided the officers probable cause for a search pursuant to the "automobile exception" by his own admission to being in possession of marijuana.

DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed and the case is remanded to the trial court for further proceedings in accordance with this opinion.
AFFIRMED AND REMANDED.
JOHNSON, J., dissents.
GULOTTA, J., concurs in part and dissents in part and assigns reasons.
WEIMER, J., concurs and assigns reasons.
CALOGERO, C.J., dissents and assigns reasons.
GULOTTA, J. (AD HOC), concurring in part and dissenting in part.
I concur in that part of the decision that affirms the ruling of the court of appeal to admit the evidence seized at the defendant's residence.
I respectfully dissent from that part of the decision that also affirms the ruling of the court of appeal to admit the evidence seized from Kevin Francis' vehicle.
Francis parked in front of his residence and exited his vehicle. The police approached him, informed him that he was the subject of a narcotics investigation, and warned him of his Miranda rights. Considering these circumstances, I am of the opinion that Francis was under arrest at that point. State v. Butler, 96-1600 (La.App. 4 Cir. 8/27/97); 700 So.2d 224. I conclude that the officers' conduct when they initially approached Francis would have communicated to a reasonable, innocent person that he was not free to decline the officers' request or otherwise terminate the encounter. The initial actions of the police in advising Francis that he was under investigation and warning him of his constitutional rights objectively indicated that the officers intended to impose an extended restraint on Francis's liberty in order to conduct a custodial interrogation. State v. Fisher, 97-1133 (La.9/9/98); 720 So.2d 1179. These actions, in my opinion, constituted a de facto arrest of Francis. State v. Hills, 01-0723, p. 5 (La.11/08/02); 829 So.2d 1027, 1030. That arrest triggered the Fourth Amendment's requirement of probable cause, which I find lacking. *1186 I therefore agree with the trial court's determination that probable cause to arrest Francis did not exist.
Since I conclude that Francis was illegally arrested when he made his admission, the issue then becomes whether the illegality of that arrest so tainted Francis' admission as to require suppression of the evidence seized in the search of his vehicle. Such an admission made after an illegal arrest is valid only when the circumstances show a break in the connection between the illegal arrest and the admission. State v. Zielman, 384 So.2d 359, 363 (La.1980). Factors to consider in determining whether a break occurred in that connection are: 1) whether the police officers adequately informed the accused that he did not need to comply with their request, 2) the closeness in time between the arrest and the admission, 3) the presence of intervening circumstances, and 4) the purpose and flagrancy of the official misconduct. State v. Mitchell, 360 So.2d 189, 191 (La.1978), citing Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
I conclude that Francis' admission was inextricably linked to the initial illegal arrest. Francis made the admission at the scene of the arrest shortly after the arrest occurred, with no intervening circumstances between the arrest and the admission. Moreover, the record does not disclose that Francis was advised of his right to refuse further contact with the officers. Francis' admission was thus directly connected to his illegal arrest. As such, the evidence seized from the vehicle was subject to suppression as the fruit of the illegal arrest and the tainted admission. In my view, the district court correctly granted the motion to suppress that evidence.
WEIMER, J., concurring.
I agree with the portion of the decision to affirm the ruling of the court of appeal to admit the evidence seized at the defendant's residence.
I concur in the portion of the decision which reverses the suppression of the evidence seized from the automobile of Kevin Francis.
As the majority notes, Detective Smith testified that the confidential informant had told him that Francis was purchasing marijuana from Julian Long on a weekly basis and that he was "presently" distributing marijuana in the Baton Rouge area. While the Long residence was being watched in anticipation of the imminent execution of the search warrant, Francis entered and then left the residence after a brief visit. The police followed Francis after he left the Long residence. However, he was not stopped. It was not until Francis parked in front of his own residence that the police approached him.
From the police report of that encounter, read into the record at the suppression hearing, after Francis parked in front of his own residence with the police trailing behind, Detectives Devall and Williams approached him and advised him of the investigation and his Miranda rights, which Francis stated he understood. The officers than asked Francis whether he had any marijuana. Francis replied that he had three pounds of marijuana in a brown paper bag resting on the rear passenger floorboard of his car. The officers retrieved the bag and found three separate packages of marijuana hidden in the brown paper bag. Detective Smith arrived shortly thereafter and described Francis as completely cooperative in the investigation.
The trial court and the parties below all treated the police encounter with Francis as a significant Fourth Amendment event that required probable cause to make it lawful. The trial court expressly found on *1187 the basis of the testimony at the hearing that the police lacked probable cause to link Francis with any criminal activity occurring at defendant's residence and that the subsequent search of his vehicle had therefore been illegal. However, the trial court did not expressly state the premise of that finding, that the police had, in fact, stopped or forcibly restrained Francis outside of his own residence before he made his incriminating response and otherwise cooperated in the investigation. As a general rule, the police remain free to approach anyone in a public place, identify themselves, and then ask a few questions, even ones which may elicit incriminating responses, although they do not have probable cause or reasonable suspicion, as long as the officers do not take the individual into custody or otherwise forcibly restrain him. Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991) ("[T]he proposition that police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions ... is by no means novel; it has been endorsed by the Court any number of times.") (citations omitted); State v. Sylvester, 01-0607, p. 4 (La.9/20/02), 826 So.2d 1106, 1108 (quoting Bostick).
Providing the Miranda warning was a prophylactic measure designed to protect the defendant's rights. The defendant could have invoked the right to remain silent. Instead, he spoke and incriminated himself.
We must not lose sight of the fact that all of the various analyses were created to aide in making one determination: did the police activity involve "unreasonable searches, seizures, or invasions of privacy." La. Const. art. I, § 5. I find the police did not act unreasonably.
Based on the factors outlined above, coupled with the facts an automobile was involved, Francis incriminated himself, and marijuana was found at the Long residence, I would not suppress the evidence of the marijuana found in the automobile of Francis.
CALOGERO, Chief Justice, dissents and assigns reasons.
For the reasons that follow, I believe the majority opinion errs in finding a "good faith" exception to the exclusionary rule under United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and then affirming the appellate court's reversal of the district court's ruling suppressing the evidence seized from the defendant's home. The majority opinion further errs in affirming the court of appeal and reversing the district court's ruling suppressing the evidence obtained from the stop of the automobile.
As the district court found, and the majority opinion pretermits review of this finding, the affidavit in this case lacked probable cause and the issuing magistrate did not have a substantial basis for deciding that probable cause existed. Therefore, I do not believe the district court abused its discretion when it granted the defendant's motion to suppress the evidence seized from his home. The court of appeal, consequently, erred in overturning the district court's suppression of that evidence.
Furthermore, in my view, the officer's affidavit was so lacking in the indicia of probable cause as to render official belief in its existence entirely unreasonable. The affidavit lacks any information as to the reliability of the confidential informant (CI) or the basis of his information. The CI's information regarding the defendant, containing as it did only easily-knowable information about the defendant's place of residence, amounts to no more than unsupported allegations of criminal behavior.
*1188 The CI's sweeping allegations of large-scale, interstate drug trafficking were not bolstered into probable cause to search the defendant's home by any of the corroborating information offered in the affidavit. The two anonymous informants, generously characterized by the majority as "separate" and "independent sources," were never identified, and there is absolutely no information as to their reliability or basis of knowledge. Indeed, the officer who obtained and executed the warrant stated in his affidavit that whatever information provided had been received "in the past," and the officer admitted at the motion hearing that he could provide no information about these persons. Furthermore, the surveillance of the defendant's home revealed no suspicious activity of any kind, and the presence in garbage  left in front of the home for weekly service for an unknown amount of time  of the empty box for gallon-sized "ziploc" bags and the untested, one-inch-long plant stem, do not support the CI's allegations of a large drug retailing operation. Thus, there is only the officer's vague assertion in the affidavit that he was "familiar" with the defendant to buttress the accusations of serious criminality made by the uncorroborated CI.
Based on my review of the record evidence, I conclude that, even though the officer secured a search warrant from a neutral magistrate, the officer's belief that the search warrant affidavit contained sufficient indicia of probable cause was not reasonable. Accordingly, I believe the exclusion of the evidence was appropriate, and the district court properly granted the defendant's motion to suppress the evidence seized from his residence.
As to the warrantless search of the Francis vehicle, I agree with the district court that the State failed to establish there was probable cause to search the vehicle belonging to Francis, who was seen leaving the defendant's Castle Kirk residence. Moreover, I disagree with the majority's finding that Francis was not seized for purposes of the Fourth Amendment prior to his admission.
The courts have consistently held that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); State v. Raheem, 464 So.2d 293, 295-96 (La.1985); State v. Ruffin, 448 So.2d 1274, 1277 (La.1984). Probable cause combined with the inherent mobility of a vehicle, carrying the risk of loss of evidence, underpins the automobile exception and allows police to conduct an immediate warrantless search as thoroughly as could be authorized by a magistrate. Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999); State v. Tatum, 466 So.2d 29, 31 (1985), citing United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157 (1982).
In the instant case, there was no probable cause to search the vehicle. The officers searched Francis's vehicle without any articulable reason to believe that marijuana would be located therein. Officer Smith testified that, despite participating in the surveillance with several other officers, he was not in a position to see Francis leave the Castle Kirk residence because he was approximately four or five homes north of the residence. The officer, therefore, did not observe whether Francis carried anything with him to his car before driving away. Nothing in the search warrant affidavit referenced what Officer Smith testified to regarding Francis's involvement with the defendant, nor was there any indication that Francis was acting suspiciously on his way home. Consequently, *1189 there was no basis for stopping Francis and searching his vehicle, because, as the district court reasoned, the information about Francis's alleged involvement with the defendant suffered from the same infirmities as the information regarding the defendant's own activities. Because the illegal stop of Francis tainted the recovery of the three pounds of marijuana from the vehicle, the district court, in my view, correctly suppressed that evidence as well.
NOTES
[*] Judge James C. Gulotta, retired, sitting for Associate Justice Chet D. Traylor, recused.
[1] Officer Smith did not perform a field test on the marijuana, but relied on the training and experience in the identification of marijuana that he acquired during his thirteen years as a narcotics officer. According to Officer Smith's testimony, the narcotics division of the Baton Rouge Police Department does not have a field test for the identification of marijuana.
[2] Officer Smith, who was the only witness who testified at the suppression hearing, was not on the scene when the marijuana was recovered from Francis. The above-mentioned chain of events was read into the record from the police report at the suppression hearing.
[3] Francis later informed officers that while at the defendant's residence, he had given the defendant $1,050 as payment for two pounds of marijuana he had previously obtained from him.
[4] Similar to the United States Supreme Court in Leon, we do not review the issue of whether the search warrant was supported by probable cause and only rule on whether, given the trial court's conclusions, suppression is the appropriate remedy.
[5] See Illinois v. Gates, 462 U.S. at 239, 103 S.Ct. at 2332, for further analysis of the "totality of the circumstances" standard which should be used when determining if probable cause exists in any particular factual scenario.
[6] A search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); State v. Raheem, 464 So.2d 293, 295-96 (La.1985). One of these exceptions pertains to the search of automobiles, in which the inherent mobility of a vehicle and the risk of losing evidence because of this mobility have prompted courts to allow police to conduct an immediate warrantless search with probable cause. Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); State v. Tatum, 466 So.2d 29, 31 (La.1985) (citing United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157 (1982)).
[7] See Segura v. U.S., where the court held that exclusionary rule reaches not only primary evidence obtained as direct result of illegal search or seizure, but also evidence later discovered and found to be derivative of illegality, or "fruit of the poisonous tree." 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).
[8] It is clear that once Francis informed the officers that he was in possession of the marijuana, he provided the officers with sufficient probable cause to search the vehicle.
[9] See also State v. Jackson, 00-3083 (La.3/15/02), 824 So.2d 1124, 1126 (citing People v. Dickinson, 928 P.2d 1309, 1312 (Colo.1996)) (after police officer observed two men sitting in a vehicle with their heads bent down, his action "of merely approaching the vehicle and identifying himself as a police officer did not implicate the protections of the Fourth Amendment."); see also United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105, 2110, 153 L.Ed.2d 242 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.").