JUDE G. GRAVOIS, Judge.
12Defendant, Royal Mitchell, III, appeals his conviction for driving while intoxicated, third offense. On appeal, defendant assigns as error the trial court’s denial of his motions to suppress his statement and evidence. ■ For the following reasons, we affirm defendant’s conviction. However, because our errors patent review reveals sentencing errors that require corrective action, we vacate defendant’s sentence and remand the matter for resentencing as instructed herein.

PROCEDURAL HISTORY

■On October 15, 2014, defendant was charged by bill of information with third offense driving while intoxicated, in violation of La. R.S. 14:98(A)(D). On December 2, 2014, defendant pled not guilty. Defendant filed motions to suppress statements and evidence, which were heard on March 5, 2015. The trial court denied defendant’s motions. Defendant objected and filed a writ application with this Court, which was denied.[1] The case proceeded to trial before a six-person jury on May 5, 2015. The jury returned a guilty as charged verdict on May 6, 2015. |aOn May 12, 2015, defendant moved for a post-verdict judgment, of acquittal and for a new trial. Ijoth motions were denied on May 14, 2015.
Defendant was sentenced on May 14, 2015 to five years imprisonment at hard labor, with three years of the sentence suspended. The court ordered the first *369 year of defendant’s sentence to be served without the benefit of 'parole, probation, or suspension of sentence. Defendant was ordered to complete- four years of active probation upon his release from prison. The sentence was -to run concurrently with defendant’s sentence-in case number 14-5668[2]- and “any parole time.” Defendant was also sentenced to the maximum fine of $2,000.00. The conditions of defendant’s probation included home incarceration and SCRAM[3] for the term of probation, costs, fees, cost of treatments, curfew in accordance with the statute, thirty 8-hour days of community service, participation in a driver improvement program, and enrollment in an inpatient treatment program for four weeks, followed by outpatient treatment “not to exceed twelve months.”[4] Defendant’s timely appeal followed.

FACTS

At trial, Sergeant John ‘ Cryer of • the Kenner Police Department testified - that he first observed defendant shortly before 6:00 a.m. on July 1, 2014 at the intersection of Roosevelt and 26th Streets in Ken-ner, Louisiana, driving at a high rate of speed:[5] Based on his training, Sergeant Cryer “conservatively” estimated that defendant was traveling'about fifty miles per hour in a thirty-mile-per-hour zone.[6] The officer pursued defendant to conduct a stop related to defendant’s speeding., He never lost sight of defendant’s vehicle. He caught up with defendant |4when defendant’s vehicle stopped at a red light at the intersection of Roosevelt Street, and Veterans Memorial Boulevard; Sergeant Cryer activated his lights and ran- the vehicle’s license plate number. After, discovering that the registered owner o.f the vehicle was “Royal Mitchell,” Sergeant Cryer initiated contact with defendant. .
When Sergeant Cryer approached the vehicle, he observed that defendant was the sole occupant thereof. Sergeant Cryer asked defendant why he was driving so fast, and requested defendant’s driver’s Incense, vehicle - registration, and proof of insurance coverage on the vehicle. During this interaction, Sergeant Cryer observed .that defendant had trouble removing his driver’s license from his wallet, his speech was mildly slurred, his breath smelled of alcohol, and his eyes were “glassy” and “bloodshot.” Sergeant Cryer also related that instead of producing his vehicle registration and proof of insurance, defendant handed Sergeant Cryer .something that looked like a receipt for tire work. Sergeant Cryer became suspicious that defendant was impaired. He inquired as to whether or not defendant had been drinking. Defendant responded he had consumed “two beers.”
A second unit arrived, and that officer escorted defendant across the street to a Burger King parking lot. “Sergeant Cryer moved defendant’s vehicle out of the street and into the' same parking lot. Sergeant Cryer then began field sobriety *370 testing with' defendant. Sergeant Cryer testified that defendant performed poorly on all three field sobriety tests administered. He stated that defendant could not complete tasks as demonstrated, and he observed several “cues of impairment.” Sergeant Cryer related that defendant’s performance was indicative of intoxication, and after failing all three components of the field sobriety test, he' arrested defendant. Sergeant Cryer placed defendant in handcuffs, patted him down, and transported him to the jail.
| KUpon arriving at the jail at about 6:37 a.m., Sergeant Cryer informed defendant of his rights and attempted to interview him. Sergeant Cryer observed defendant for fifteen minutes before attempting to obtain a breath sample from him for an “intoxilyzer” test. Sergeant Cryer related that this is protocol to ensure that no alcohol is reintroduced into a suspect’s mouth through burping or vomiting. During the fifteen-minute observation period, Sergeant Cryer administered a second field sobriety test to defendant.[7] The results of this test were “similar” to those of the test conducted at the traffic stop. Subsequently, Sergeant Cryer prepared the “intoxilyzer” for defendant to submit a breath sample. Defendant refused to submit such a sample for the “intoxilyzer” test, and the machine “timed out” without obtaining a sample.
When defendant refused to submit a breath sample, Sergeant Cryer completed standardized reports to memorialize defendant’s performance on the field sobriety tests and an affidavit to obtain a search warrant to take blood from defendant. Sergeant Cryer testified that his reports contained errors, and some facts were included in some of the documents and omitted in others that he completed. Sergeant Cryer admitted that he included a roadside statement that defendant had consumed two beers in the affidavit where he should have only included statements made during transport and post-Miranda[8] He stated that it was “typical,” however, to include any statements concerning consumption in that section of the affidavit regardless of when they occurred. Sergeant Cryer also asserted that including the statement would have done little to bolster the showing of probable cause for the warrant because two beers would not, in his opinion, be | (¡enough to intoxicate someone. Additionally, he related that time was crucial because of the dissipation of alcohol in the blood over time. Defendant was pulled over at 5:49 a.m. and refused to give a breath sample at 6:59 a.m. The search warrant was presented to the criminal commissioner and signed at 7:37 a.m. When Sergeant Cryer received the approved search warrant, he called to have a paramedic come over to the jail to complete the blood draw.
Joseph Giovingo was the paramedic dispatched to collect defendant’s blood sample at the jail.[9] Mr. Giovingo reviewed the search warrant and other documents when he arrived at the jail at 8:04 a.m. He used the kit assigned to defendant’s case and drew defendant’s blood at 8:19 a.m. Mr. *371 Giovingo signed the chain of custody form related to the sample and returned the kit to Sergeant Cryer. Sergeant Cryer retrieved the blood from Mr. Giovingo at 8:22 a.m. and gave the kit containing the sample to a crime scene technician at 8:25 a.m. Mr. Giovingo departed the jail at 8:28 a.m.
Mary Tate of the Louisiana State Police crime lab was qualified as an expert in blood alcohol analysis. She testified that the machine that analyzes blood alcohol concentration (BAC) is calibrated daily before any tests are run to ensure accuracy of the results. Additionally, Ms. Tate stated that two samples are run in each test to ensure accuracy of the findings. Ms. Tate testified that “the two results you g¿t, they have to be within plus or minus point-zero-one of bach other.” If the samples are not within that range, the test niust be run again with two more samples. ' The first two samples' she tested of defendant’s blood produced rbsults that were outside of the allowed range.[10] During her second test, sample one |7showed a BAC of 0.199, and sample two showed a BAC of 0.195.[11] Therefore, Ms. Tate determined that defendant’s BAC was 0.19 grams percent with a 0.02 uncertainty.[12] Ms. Tate testified that even considering the uncertainty and giving defendant the benefit of a 0.17 BAC reading, he still would be above the legal limit. Ms. Tate also testified that all of her work is reviewed by another analyst to ensure its veracity.
Deputy Donna Quintanilla of the Jefferson Parish Sheriffs Office was qualified as an expert in latent print processing and comparison. She testified that she obtained prints from defendant that day at court before she testified. She identified defendant in open court as the person from whom she obtained prints that day. She stated that she compared the prints she obtained that :day to two conviction packets for DWI convictions from October 5, 2004,[13] and January 6, 2010,[14] She confirmed that the prints she compared were all from the same individual, (defendant). Additionally, she confirmed that defendant’s birthday and social security number were the same in this case as in the two prior conviction packets. She stated that another analyst also confirmed her findings.,
. Lieutenant Marc Ortiz, who handles legal affairs for the ‘Kenner Police Department, testified that Sergeant Cryer applied for search warrants for blood, draws relating to DWI arrests twenty-two times between July 1, 2012, and the date of the trial. ⅜ ..
| ¡¡ASSIGNMENT OF ERROR NUMBER ONE

Suppression of statement

Defendant first argues on' appeal that the motion to' suppress Ms statement *372 should have been granted because the statement that he had consumed two beers was made after the officer had decided to arrest defendant, but before he was advised of his Miranda rights. The State argues -that the “law of the case” doctrine should dictate, and this Court should not revisit the issue it previously decided in defendant’s writ application. Additionally, the State responds that Miranda warnings were not .required because the statement was made during routine roadside questioning. • ■
The threshold issue involves the applicability of the doctrine of “law of the case.” The State cites State v. Wallace, 12-594 (La.App. 5 Cir. 2/21/13), 110 So.3d 1199, writ denied, 13-0646 (La.10/11/13), 123 So.3d 1217, in which this Court stated:
Under the doctrine of “law of the case,” an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. State v. Pettus, 11-862 (La.App. 5 Cir. 5/22/12), 96 So.3d 1240 (citation omitted). The- law of the case doctrine is discretionary. Id.
One reason for imposition of the doctrine is the avoidance of indefinite relit-igation of the same issue; but it will not be applied in cases of palpable former error. State v. Johnson, 06-859 (La.App. 5 Cir. 4/11/07), 957 So.2d 833, 840. Reconsideration is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. In re K.P.W., Jr., 03-1371 (La.App. 5 Cir. 5/26/04), 875 So.2d 903, 905; State v. Davis, 03-488 (La.App. 5 Cir. 11/12/03), 861 So.2d 638, 641, writ denied, 03-3401 (La.4/2/04), 869 So.2d 874.
UPrior to defendant’s trial, this Court received an emergency writ application concerning the same matter defendant now presents on appeal. Defendant included in his writ application the transcript of the suppression hearing, along with Sergeant Cryer’s reports and probable cause affidavit relating to defendant’s arrest and the search warrant in question.[15] In its •writ disposition, this Court found:
The trial court is afforded great discretion in ruling on a motion to suppress, and its ruling will not be disturbed absent an’ abuse of discretion. State v. Welch, 11-0274 (La.4/29/11), 60 So.3d 603; State v. Banks, 11-961 (La.App. 5 Cir. 5/22/12), 95 So.3d 508. After reviewing the writ application and carefully considering the evidence presented at the motion to suppress hearing, we find that the trial court did not abuse its discretion in' denying relator’s motions to suppress. ... Nor do we find error in the trial court’s refusal to suppress the relator’s admission. Further, relator may cross-examine Sergeant Jon Cryer at trial in accordance with and for the purposes provided by La. C.Cr.P. art. 703 G.
Furthermore, relator has an adequate remedy on appeal in the event.that he is convicted. Accordingly, this writ application is denied.
See State v. Mitchell, supra (n. 2).
It is noted that in the denial of defendant’s writ application, this Court specifically stated defendant “has an adequate remedy on appeal in 'the event that he is convicted.” Appellate review of a matter in the same case is discretionary. Given this Court’s prior writ disposition, and the entirety of Sergeant Cryer’s testimony at *373 trial, including in depth cross-examination concerning the inconsistencies and errors in his DWI packet and the application for the search warrant, along .with the'.testimony of other witnesses, we decline to impose the “law of the case” doctrine herein and will accordingly revisit the suppression issue.
In a hearing .on a. motion to suppress, the State shall have the burden of proof in establishing the admissibility of a purported confession or statement by the defendant. La. C.Cr.P. art. 703(D). The trial court is afforded great discretion 11flwhen ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, 122, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008); State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 574. When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support them. State v. Cole, 13-540 (La.App. 5 Cir. 12/12/13), 131 So.3d 931, 935-36. Although not required to'do so, an appellate court may’review the testimony adduced at trial, in addition to the testimony adduced at the suppression hearing, in determining the correctness of the trial court’s pre-trial ruling on a motion to suppress. Cole, 131 So.3d at 936 (citing State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 122, cert. denied sub nom. Leger v. Louisiana, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007)).
This Court has repeatedly held that an inculpatory statement made by a defendant to ,a police officer as a result of a traffic stop does not constitute a custodial interrogation, and thus, does not trigger the requirements of Miranda. State v. Dufrene, 12-716 (La.App. 5 Cir. 4/10/13), 115 So.3d 22, 24-25; State v. Bourgeois, 00-1585 (La.App. 5 Cir. 3/14/01), 785 So.2d 848, 852; State v. Pomeroy, 97-1258 (La.App. 5 Cir. 5/13/98), 713 So.2d 642, 645. See also Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).
In State v. Pomeroy, supra, this Court held that the defendant’s inculpato-ry statement made during roadside questioning that he had consumed four beers was admissible. This Court reasoned that such questioning during a routine traffic stop did not amount to a custodial interrogation, and" the trial court did not err in refusing to suppress the admission. Similarly, in the present case, we find that | n defendant’s statement that he had consumed two beers made during roadside questioning pursuant to a valid traffic stop should not be suppressed. Therefore, we find that the trial court did not err in denying defendant’s motion to suppress the statement. It is further noted that the officer observed ample signs of-defendant’s impairment - prior- to asking defendant whether he had been drinking, as noted above. This assignment-of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

Suppression of evidence

Deféndant next argues that the trial court erred in denying his motion to suppress evidence because the search warrant application with the magistrate for a blood draw was improper. Specifically, defendant asserts that the officer’s inclusion of a pre-Miranda statement in the affidavit misled the magistrate, and .-the search warrant may not have been issued had it not been included. Defendant contends that the blood -draw itself is thus tainted and *374 should have been excluded. In response, the State again argues that this Court should not revisit the decision concerning the suppression of evidence in accordance with the “law of the case” doctrine. ■ Alternatively, the State argues that Sergeant Cryer did not act with intent to deceive the Commissioner when applying for the warrant; and even upon striking the statement relating to defendant having consumed two beers, there remained adequate probable cause for the warrant to be issued.
Defendant also argued in his emergency writ application .that Sergeant Cryer’s errors in the reports and application for search warrant suggested he was misleading the magistrate. Defendant makes the same argument on appeal.
As noted above, at the suppression hearing, Sergeant Cryer testified that upon stopping defendant, he became suspicious that defendant was drunk. -Defendant stated that he had consumed two beers. Sergeant Cryer then | ^administered field sobriety tests to defendant. Sergeant Cryer stated that defendant did not perform the walk and turn test as. instructed and demonstrated. Sergeant Cryer admitted that the results of this test as memorialized in one of his reports was written down in error, suggesting that defendant only did the first half of the test even though he completed the entire test. Sergeant Cryer arrested defendant for DWI. He then transported defendant to the jail, where defendant was read his rights. Sergeant Cryer testified that defendant refused to submit a breath sample, so he requested a search warrant to draw defendant’s blood. He completed an affidavit in support, and the criminal commissioner signed the search warrant. A- paramedic was dispatched and arrived to draw the blood. Sergeant Cryer stated that he included the two-beer statement in his affidavit in support of the search warrant, but that such -an inclusion 'was typical. He stated that he did not lie -in order to mislead the magistrate in the affidavit for the search warrant.
When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence. See La. C.Cr.P. art. 703(D); State v. Johnson, 08-265 (La.App. 5 Cir. 8/19/08), 994 So.2d 595, 599. The trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of its discretion. State v. Lee, supra; State v. Rogers, 09-13 (La.App. 5 Cir. 6/23/09), 19 So.3d 487, 493, writ denied, 09-1688 (La.4/9/10), 31 So.3d 382.
The Louisiana and Federal Constitutions prohibit unreasonable searches and seizures. State v. Lee, 976 So.2d at 122. A search warrant may issue only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. La. C.Cr.P. art. 162; State v. Lee, supra. Probable cause sufficient to issue a search warrant “exists when the facts and circumstances within | i.qthe affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.” State v. Lee, supra (citations omitted).
Although certainty of knowledge of the commission of a particular crime is frequently an important factor in the determination - of probable cause, probable cause may exist when the commission of a crime has not been definitely established, but is -reasonably probable under the totality of the known circumstances. State v. *375 Green, 02-1022 (La.12/4/02), 831 So.2d 962, 969.
This determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. State v. Green, 831 So.2d at 969. Rather, as the name implies, probable cause deals with probabilities. Id. As a result, the determination of probable cause, unlike the determination of guilt at trial, does not require the fíne resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands. Id., 831 So.2d at 969-70. Instead, the determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Id., 831 So.2d at 970.
“The process [of determining probable cause] simply requires that enough information be presented to the issuing magistrate to enable him' to determine that the charges are not capricious and are sufficiently supported to-justify bringing into play the further steps of the criminal. justice system.” State v. Rodrigue, 437 So.2d 830, 833 (La.1983) (citing Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965)). This affidavit must'contain, within its four comers, the facts 11 establishing the existence of probable cause for the warrant. State v. Green, 831 So.2d at 969.
For a reviewing court, the task is simply to insure that under the totality of the circumstances the magistrate had a “substantial basis” for concluding probable cause existed. State v. Lee, supra. Thus, “[t]he magistrate’s determination of probable cause, prior to issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magistrate’s assessment to be reasonable.” State v. Green, supra (quoting State v. Rodrigue, 437 So.2d at 833). Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, reviewing courts should interpret the affidavit in a realistic and common sense fashion, aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. Id. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. Id.
An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving that the representations made in the affidavit are false. State v. Johnson, 994 So.2d at 599; That burden requires the defendant to prove' by a preponderance' of the evidence that the affidavit contains intentional misrepresentations. State v. Trotter, 37,325 (La.App. 2 Cir. 8/22/03), 852 So.2d 1247, 1253, writ denied, 03-2764 (La.2/13/04), 867 So.2d 689.
For an affiant to make a material and intentional misrepresentation to a magistrate constitutes a fraud upon' the court and will result in the invalidation of the warrant and suppression of the items seized. State v. Byrd, 568 So.2d 554, 559 (La.1990); State v. Williams, 448 So.2d 659, 663 (La.1984). However, if the misrepresentations or omissions are inadvertent, negligent, or are included without an intent to deceive, the correct procedure is for the warrant to be retested for ⅜-Improbable cause after supplying that which was omitted or striking that which was misrepresented. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1029, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); see also State v. Byrd, supra.
*376 In the instant case, defendant asserts that Sergeant Cryer intentionally misled the magistrate by including in, his probable cause affidavit the statement defendant made that he had consumed two beers. Defendant contends. that the affidavit only allows for statements made duping transport and after .Miranda warnings have been issued.[16] Sergeant Cryer’s testimony supports his contention that he did not intentionally mislead the magistrate to obtain the warrant. Specifically, Sergeant Cryer stated that the inclusion of such a statement would be inconsequential to obtaining a warrant because in his experience as an officer with over three hundred DWI arrests, two beers would not have been enough to cause intoxication.
Where the affiant does not intend to mislead the magistrate,.the proper action is to strike the improperly included portion and reassess the affidavit for probable cause. In this case, the affidavit in support of the search warrant states probable cause apart from the two-beers statement. The affidavit states that defendant exhibited several symptoms of intoxication. It continues that defendant had a strong odor of alcohol on his breath and slurred speech when the officer made contact with him. The affidavit states that defendant was unable.to remove his license from his wallet, and defendant handed the officer a bill for tire work when he was prompted for his registration and insurance. Additionally, it states that defendant performed poorly on the field sobriety tests administered to him. All of these details together provide probable cause for the search warrant to obtain | ^defendant’s blood. Therefore, even if the included statement was improper, the application for the search warrant contained sufficient probablfe cause apart from the statement to obtain the search warrant. This assignment of error is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters require corrective action.
While the trial court placed many conditions on defendant’s probation, one condition makes the sentence illegal, While the omission of some required conditions makes the sentence too lenient. First, defendant’s sentence is illegal because he was placed on home incarceration for the term of his four years of active probation. According to La. R.S. 14:98.3(A)(3)(c), an offender’s term of home incarceration should not be more than the remainder of the sentence of imprisonment.[17] Therefore, since defendant only had three years of his sentence suspended, the- imposition of home incarceration for the entirety of defendant’s four-year term of active proba *377 tion exceeds the remainder of his sentence of imprisonment. Therefore, we must re1 mand the case for correction of the sentence in compliance with La. R.S. 14:98.3.
Additionally,, the trial court imposed an illegally lenient sentence when it failed to specify that defendant’s home incarceration would include electronic monitoring and monthly home visits for the first six months, with supervision thereafter-being determined by the Department of . Corrections’. . assessment of | ^defendant’s risk. The trial court also failed to notify defendant that he would be required to find employment as a condition of the home incarceration element of his probation, or about the limitation of his activities outside the home. See La. R.S. 14:98.3,[18] La. R.S. 14:98.5,[19] and La. C.Cr.P. art.' 894.2.[20] La. 'C.Cr.P. art. 894.2 appears to make, the imposition of some conditions of home’, incarceration discre *378 tionary. However, La. R.S. 14:98.5(B)(3)(f) provides that all conflicts between La. C.Cr.P. art. 894.2 and La. R.S. 14:98.5 shall be resolved in favor of La. R.S. 14:98.5. Therefore, the conditions to be imposed as provided in La. R.S 14:98.5 are mandatory.
|1sWe further note that a form setting out defendant’s conditions of probation was executed and signed by defendant; however, the omissions from the sentencing dialogue, apart from the requirement that defendant find employment approved by his probation officer, were not contained in the form. This Court has previously held that similar deficiencies have made a sentence illegally lenient. This Court previously vacated such a sentence and remanded for resentencing in compliance with the applicable statute. (See State v. Hunter, 13-82 (La.App. 5 Cir. 7/30/13), 121 So.3d 782, 787, where this Court remanded for resentencing when the trial court failed to mention electronic monitoring, curfew, or home visitation in accordance with the home incarceration conditions related to a fourth offense DWI, making the sentence illegally lenient). Therefore, defendant’s sentence must be vacated and the case remanded for resentencing so that the trial court may specify the conditions of defendant’s home incarceration in accordance with the appropriate statutes.
Further, although the minute entry states that defendant was informed of the time restrictions for seeking post-conviction relief, the transcript contains no advice of rights concerning the time limits for seeking post-conviction relief. Generally, where there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Upon remand and at resentencing, the trial court is instructed to properly advise defendant of the prescriptive period under La. C.Cr.P. art. 930.8.
Lastly, the adjudication date is incorrectly memorialized in the Uniform Commitment Order as May 14, 2015. The actual date of adjudication was May 6, 2015. Accordingly, we instruct the trial court to correct the Uniform Commitment Order upon resentencing. See State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied, 14-0481 (La.11/7/14), 152 So.3d 170 (citing State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142).

CONCLUSION

For the foregoing reasons, defendant’s conviction for driving while intoxicated, third offense, is affirmed. Defendant’s sentence is hereby vacated, and the matter is remanded for resentencing in accordance with this opinion and for Correction of the Uniform Commitment Order as specified herein.

CONVICTION AFFIRMED; SENTENCE VACATED: REMANDED WITH INSTRUCTIONS

. In the same incident, defendant was charged with reckless-operation of a vehicle, a misdemeanor.

. "SCRAM” is an alcohol monitoring system.

. See Errors Patent discussion, infra, concerning sentencing issues.

. The time stamp on the La. Uniform DWÍ packet indicates that defendant was arrested at 5:49 a.m.

.Sergeant Cryer testified that in his eighteen years employed by the Kenner Police Department, he has made in excess of three hundred DWI arrests. He has completed a field sobriety instructor course through the Louisiana ' State Police and is certified as an Intoxilyzer 5000 operator.

.According to Sergeant Cryer, officers typically will record video of field sobriety tests done at the jail. However, he testified that there may have been a "glitch” in the system because there is no evidence of the field sobriety test done on defendant at the jail on the jail DVD, though Sergeant Cryer stated he had tried to record the field sobriety test done at the jail.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Mr. Giovingo identified defendant in court as the man he took blood from.

. The first sample returned a BAC of 0,209; the second sample showed a BAC of 0.190. The acceptable difference is 0.01. Therefore, Ms. Tate retested the blood until she found samplés that were within the' 0.01 allowable variation.

. These results were within the acceptable parameters.

. This uncertainty is noted in every test run by the machine. Taking into consideration the uncertainty, Ms. Tate testified that defendant's BAC could have given results ranging from 0.17-0.21 if she had run the analysis one hundred times.

. The State introduced the certified conviction packet for case number 04-184 where defendant pled guilty to DWI third offense in St. John the Baptist Parish.

. The State introduced the certified conviction packet for case number 08-446 where defendant pled guilty to DWI second offense in St. John the Baptist Parish.

. See Uniform Rules, Court of Appeal-Rule 2-1.14 which states, "[a]ny record lodged in this court may, with leave of court, be used, without necessity of duplication, in any other case on appeal or on writ.”

. While the evidence shows that the pre-Miranda roadside statement was documented in the wrong section of the probable cause affidavit, Sergeant Cryer testified at the suppression hearing and at trial that it is typical practice to document any statement made concerning consumption in that section of the warrant no matter when the statement was made.

. This.Court has adopted.the Louisiana Supreme Court’s finding that the general rule, that the applicable statute is that which was in effect at the time of the offense, does not apply to La. R.S. 14:98 where the specific statutory, provisions required the applicable law was the law in effect at the time of defendant’s conviction. State v. Magana, 09-195 (La.App. 5 Cir. 10/13/09), 27 So.3d 893, 897 (citing State v. Mayeaux, 01-3195 (La.6/21/02), 820 So.2d 526, 530-31). Defendant was convicted of a third offense DWI on May 6, 2015. . Therefore, La. R.S. 14:98.3 is the applicable law in this case. It was newly effective as of January 1, 2015.

. La. R.S. 14:98.3(A)(3)(c) provides:
In addition to the requirements set forth in Subparagraphs (a) and (b) of this Paragraph, any offender placed on probation pursuant to the provisions of this Subsection shall be placed in a home incarceration program approved by the division of probation 'and parole for. a period of time not less than six months and not more than the remainder of the sentence of imprisonment. The terms of home incarceration shall be in compliance with the provisions of R.S. 14:98.5(B) and Code Of Criminal Procedure Article 894.2.

. La. R.S. 14:98.5(B) provides, in pertinent part:
[[Image here]]
(3) Except as modified. by Paragraph (5) of this Subsection, when the.court sentences an offender to home incarceration, the offender shall be subject to special conditions to be determined by the court, which shall include but not be limited to the following:
(a) Electronic monitoring. However, nothing in this Section shall prohibit a court from ordering nonelectronic monitored home incarceration as a condition of probation for a first or second conviction where the period of home incarceration is less than five days.
Co) Curfew restrictions.
(c) The court shall require the offender to obtain employment.
(d) The court shall require the offender to participate in a court-approved driver improvement program, if not already a con- • dition of his probation.
(é) The activities of the offender outside of his home shall be limited to traveling to and from work, church services or other religious services, Alcoholics Anonymous meetings, Narcotics' Anonymous meetings, other secular-based addiction recovery group meetings,' accredited "educational institutions, meetings with his probation or parole officer, court-ordered community service activities, court-ordered substance abuse treatments, and a court-approved driver improvement program. ■ ;
(f) Except as inconsistent with the provisions of this Subsection, an offender-sentenced to home incarceration, shall be subject to all other applicable provisions of Code of Criminal Procedure Article 894,2-. ■ ‘
[[Image here]]
(5) When the offender is on probation for a third or subsequent offense, or on a second offense under R.S.' 14:98.2(D), a home visitation shall be conducted at least once per month by the Department of Public Safety and Corrections for. the first six months. After the first six months, the level of supervision shall be determined by the department based upon a risk assessment instrument,

.La.C.Cr.P. art. 894.2 provides, in pertinent part: •
[[Image here]]
C. The court shall, specify the conditions of home incarceration. .The conditions may include any condition reasonably related to implementing or monitoring the home incarceration, including curfew, electronic or telephone monitoring, home visitation by persons designated by the court, and limitation of the defendant's activities outside of the home.
[[Image here]]
F. The court may require the defendant to obtain employment and may require thq defendant to pay a reasonable supervision fee to -the supervising agency to defray the cost of his home incarceration supervision.