STATE OF LOUISIANA                          NO. 24-K-444

VERSUS                                       FIFTH CIRCUIT

BILLY LAMPTON                                COURT OF APPEAL

                                             STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

*Wiseman*

Linda Wiseman
First Deputy, Clerk of Court

October 22, 2024

Linda Wiseman
First Deputy Clerk

**IN RE** BILLY LAMPTON

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE JUNE B. DARENSBURG, DIVISION "C", NUMBER 23-2560

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Timothy S. Marcel

**WRIT DENIED**

Relator, Billy Lampton, seeks review of the district court's August 23, 2024 ruling denying his motion to suppress evidence and identification. For the following reasons, we deny Lampton's writ application.

***Procedural History***

On June 1, 2023, the Jefferson Parish District Attorney filed a bill of information charging Billy Lampton with one count of possession with intent to distribute fentanyl, a violation of La. R.S. 40:967(A) (count one), and one count of possession with intent to distribute marijuana weighing 2.5 pounds or greater, a violation of La. R.S. 40:966(A) (count two), with both counts alleged to have occurred on September 2, 2022. Lampton pled not guilty.

24-K-444

Lampton filed a motion to suppress evidence and identification. A hearing on that motion was held on August 7, 2024.[1] At the close of the hearing, the district court took the matter under advisement after granting defense counsel's request to file a post-hearing memorandum. After defense counsel's post-hearing filing, additional arguments were heard on August 23, 2024, after which the district court denied Lampton's motion to suppress.[2] This writ application seeking review of the trial court's ruling followed. The district court granted defense counsel's motion to stay the matter pending this Court's ruling.

*Factual Background*

At the August 7, 2024 suppression hearing, Sergeant David Biondolillo stated that he is a sergeant with the Jefferson Parish Sheriff's Office ("JPSO") Narcotics Division and has worked as a task force officer with the Drug Enforcement Administration ("DEA") – Height Task Force along with other detectives, including Detectives Christopher Cade and Christopher Powe. Biondolillo explained that beginning in 2021 or 2022, the task force investigated high intensity drug trafficking using long-term wiretap investigations of criminal organizations. During the wiretap investigations, the task force received information from a confidential informant ("CI"), regarding Lampton dealing heroin and fentanyl. This information was later corroborated by surveillance of Lampton's activities.[3] The CI informed law enforcement that he knew Lampton

---

[1]     It does not appear from the record that Lampton ever filed a written motion to suppress.

[2]     The district court also denied Lampton's motion for impeaching information regarding the "cooperative defendant" or "confidential informant" in this case.

[3]     According to Biondolillo, the task force researched the information provided by the CI, and through surveillance, identified Lampton's vehicles and his residence on "Grandlake," and observed Lampton engaging in activities consistent with hand-to-hand transactions. Biondolillo explained that Lampton was not arrested at that time because the transactions observed occurred in Orleans Parish, not Jefferson Parish.

and identified Lampton as the dealer in a photograph. That photograph was presented to the CI, individually, not in a six-pack lineup.[4]

Biondolillo testified that the task force conducted surveillance of Lampton at his apartment on September 2, 2022. On that day, officers observed IV Waste empty nearby trash dumpsters. Shortly thereafter, they saw Lampton exit his apartment with a garbage bag, discard it in the dumpster, and then re-enter his apartment. According to Biondolillo, who had observed the dumpster both before and after it was emptied, Lampton's garbage bag was the only item in the dumpster. Officers then retrieved the discarded bag, which contained "three empty packages [kilo wrappers] immediately identified as packaging used for kilograms." Biondolillo testified that upon opening the trash bag, officers recognized a pungent "pickle like vinegary smell" "consistent with the odor of heroin/fentanyl."[5]

Based on these findings, Biondolillo requested a search warrant for Lampton's residence. He confirmed the search warrant application was true to the best of his knowledge. In his testimony, Biondolillo explained the warrant application referenced "federal wiretaps" related to an ongoing federal investigation into a New Orleans organization, but there were no wiretaps pertaining to the instant case. Biondolillo further explained that the wiretaps involved fentanyl transactions and that Lampton may have been a third party to the transactions. However, Lampton never spoke in the wiretaps nor was his name mentioned in the recordings.

According to Biondolillo, the officers waited outside Lampton's apartment for approval of the for the search warrant. While waiting, they observed Lampton

---

[4] The CI was subject to criminal prosecution at the time he gave the information to the task force. In briefing, and at the hearing, the CI was interchangeably referred to as the "confidential informant" and/or "cooperating defendant ("CD")." In the search warrant affidavit, the CI was referred to as a "CD."

[5] According to Biondolillo, he has worked in narcotics investigations since 2008 and is familiar with the odor of marijuana, cocaine, fentanyl, and heroin.

exit his apartment and the officers stopped him in the parking lot so as to detain him pending execution of the warrant. Lampton was handcuffed and patted down. Biondolillo testified that he read Lampton his *Miranda*[6] rights, during which Lampton was cooperative and provided officers with a key to his residence. The officers then secured Lampton's residence for the officer's safety to ensure no one else was inside and to prevent the potential destruction of evidence. At Lampton's request, the officers relocated inside his apartment. Biondolillo stated that once he received the signed search warrant, he executed it. The search of Lampton's residence yielded approximately 181 grams of what was believed to be fentanyl in a box and a scale in the kitchen cabinet, where Lampton stated it would be located. Additionally, the search yielded a quantity of marijuana in a cardboard box found in the bedroom. The task force also discovered paperwork containing information indicating another residence connected to Lampton. Lampton gave his consent for the officers to search that residence, but nothing of evidentiary value was found therein. Lampton was placed under arrest.

*Post-Hearing Memorandum*

In his post-hearing memorandum, Lampton claimed the State, through Biondolillo, informed the district court that there was "not a single federal wiretap, little less multiple federal wiretaps" in the task force's investigation, and that the officers had supplied false information to the court. Lampton alleged that there were no calls in which he was recorded, his name was not mentioned in any federal wiretap, and he made no transactions with the CI. Consequently, Lampton averred that Biondolillo's statement in the search warrant affidavit that information about him was corroborated by "multiple federal wiretaps" was a false statement made

---

[6] *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4

with the intent of misleading the court. Lampton argued there was no probable cause that an identified controlled dangerous substance was located in his house.

Lampton further argued that the identification of the CI referred to in the search warrant affidavit was unreliable because he was shown only a single confirmation photograph.[7] Lampton claimed the State refused to provide any information regarding the CI's background, or whether the CI was known by any of the investigating officers. Lampton also argued that the crime lab report admitted during the motion hearing established there was no scientific proof that there was a detectable amount of any drugs found on the kilo wrappers discovered in the trash bag he discarded in the dumpster.

According to Lampton, discovery of the kilo wrappers, which Biondolillo claimed smelled like "heroin/fentanyl,"[8] the scant information given about the CI, and the single photo identification procedure, were insufficient to provide probable cause for the issuance of the search warrant. As such, Lampton argues the district court erred in failing to suppress the evidence obtained pursuant to that warrant and to suppress the identification by the CI.

The State countered that the information on Lampton was developed through the wiretaps involved in the long-term wiretap investigations of criminal organizations and through the CI. The State further argued that the information was then corroborated by the surveillance and actions testified to by Biondolillo at the hearing. The State explained that the reason for the single photo identification was that the CI had already named Lampton and indicated that he/she knew him.

The trial court denied the motions to suppress evidence and identification.

---

[7] Defense counsel had previously filed a motion to produce impeaching information regarding the confidential informant, the hearing on which the trial court consolidated with the suppression hearing.

[8] Attached to relator's post-hearing memorandum was a "monograph" from the Center for Disease Control providing facts about fentanyl, including that fentanyl has no smell.

*Discussion*

In his writ application, Lampton avers the district court erred in denying the motions to suppress evidence and identification, and in denying his motion to disclose the "impeaching information" relative to the CI. For the following reasons, we disagree.

**Motion to Suppress Identification**

Lampton argues the district court should have suppressed the single photo identification because it was suggestive and unreliable because the CI never made any purchases from him, and the State never established exactly how the CI purportedly knew him. Lampton claims that Biondolillo did not testify the CI ever met him or that the CI gave a description of him. The State responded that it "in no way whatsoever seeks admissibility at trial of the 'identification' of Lampton by the confidential informant." It contends that a motion to suppress relates solely to information to be admitted at trial, not a step taken by police with a CI during an investigation, and as such, there is nothing to suppress.

Louisiana Code of Criminal Procedure article 703 provides that a defendant adversely affected may move to suppress any evidence from use *at trial on the merits* on the ground that it was unconstitutionally obtained. First, even if the identification was suggestive as Lampton contends, and while single photograph identifications are often viewed with suspicion by the courts, given the totality of the circumstances, we find, as did the district court, there was no substantial likelihood of misidentification in this case. Biondolillo testified that the photograph was shown to the CI only after the CI indicated that he or she knew Lampton, and that Lampton distributed heroin and fentanyl. *See State v. Winding*, 00-364 (La. App. 4 Cir. 4/11/01), 787 So.2d 385, 390, *writ denied*, 01-1445 (La. 4/19/02), 813 So.2d 417; *State v. Salone*, 648 So.2d 494, 495.

Second, in its opposition to Lampton's writ application, the State avers that it does not intend to introduce the CI's identification of Lampton at trial. Consequently, we agree that there is nothing for district court to suppress. The district court did not err in denying Lampton's motion to suppress identification. *See State v. Wilson*, 432 So.2d 347, 348 (La. App. 1 Cir. App. 1983).[9]

**Motion to Suppress Evidence**

Lampton argues Biondolillo's search warrant intentionally contained information that he knew was erroneous, vague, and misleading in order to overcome the "obvious lack of probable cause." Specifically, Lampton argues that because there were no wiretaps in this case, nor "firm corroboration" that he lived at the location under surveillance—either from the CI or an independent investigation—the warrant must be retested without the offending language.

Lampton also questions the CI's credibility and points out that, while the CI identified him through a "single suggestive" photographic identification, no testimony was provided at the hearing that the CI ever purchased narcotics from him or that the CI had ever been to his residence. Lampton argues that the portion of the search warrant relative to the task force's surveillance of his apartment on Grandlake should be stricken because it was not corroborated and conclusory statements are insufficient to establish probable cause. According to Lampton, the CI provided nothing from which an officer would reasonably determine that the CI had inside information or special familiarity with his affairs.

Further, Lampton argues that because fentanyl is odorless, Biondolillo's statement in the search warrant affidavit that the officers smelled a pungent odor

---

[9]     In *Wilson*, shortly after the defendant's arrest, the police questioned him and recorded inculpatory statements. The defendant moved to suppress the statements and, after a hearing, the motion was denied. On appeal, the defendant assigned as error the denial of his motion to suppress. The First Circuit pointed out that at the trial, the State did not introduce the statements into evidence, and no reference to them was made in the State's opening argument. Consequently, the court held that the defendant was not prejudiced by the denial of his motion, and the issue became moot when the State did not introduce the evidence. The court found the assignment of error lacked merit. *Wilson*, 432 So.2d at 348 (citing *State v. Smith*, 339 So.2d 829 (La. 1976), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1685, 52 L.Ed.2d 381 (1977)).

consistent with "heroin/fentanyl" was a fabrication. He claims that once the "offending language" is removed from the warrant, all that is left is a story by the police without cause or reason.

In response, the State argues the district court did not abuse its discretion in denying the motion to suppress evidence because a review of the four corners of the search warrant shows that probable cause was clearly established, and that Lampton's arguments that the search warrant affidavit contains material misrepresentations are meritless. Moreover, the State contends that even if the search warrant was based on insufficient probable cause, suppression is not appropriate because the officers executed the warrant in good faith.

When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence. *See* La. C.Cr.P. art. 703(D); *State v. Johnson*, 08-265 (La. App. 5 Cir. 8/19/08), 994 So.2d 595, 599. The trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of discretion. *State v. Simmons*, 22-232 (La. App. 5 Cir. 7/6/22), 346 So.3d 349, 354.

The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. *State v. Thomas*, 08-390 (La. App. 5 Cir. 1/27/09), 8 So.3d 80, 83, *writ denied*, 09-626 (La. 11/25/09), 22 So.3d 170. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. *Id*. A search warrant may issue only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. La. C.Cr.P. art. 162; *State v. Lee*, 05-2098 (La. 1/16/08), 976 So.2d 109, 122, *cert. denied*, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008). Probable cause sufficient to issue a search warrant "exists when the facts and circumstances within the affiant's knowledge

8

and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." *Id*.

Although certainty of knowledge of the commission of a particular crime is frequently an important factor in the determination of probable cause, probable cause may exist when the commission of a crime has not been definitely established, but is reasonably probable under the totality of the circumstances. *State v. Green*, 02-1022 (La. 12/4/02), 831 So.2d 962, 969. This determination of probable cause, although requiring something more than bare suspicion, does not require evidence to support a conviction. *Id*. Rather, as the name implies, probable cause deals with probabilities. As a result, the determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt, or even a preponderance standard, demands. *Id*. at 969-70.

"The process [of determining probable cause] simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system." *State v. Mitchell*, 15-524 (La. App. 5 Cir. 12/9/15), 182 So.3d 365, 375. The affidavit must contain, within its four corners, sufficient facts to establish the existence of probable cause for the warrant. *Id*.

For a reviewing court, the task is simply to insure that, under the totality of the circumstances, the magistrate had a "substantial basis" for concluding probable cause existed. *Lee*, *supra*. Thus, "[t]he magistrate's determination of probable cause, prior to the issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magistrate's assessment to be reasonable." *Green*, 831 So.2d at 969 (quoting

9

*State v. Rodrigue*, 437 So.2d 830, 833 (La. 1983)). Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, reviewing courts should interpret the affidavit in a realistic and common-sense fashion, aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. *Id*. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. *State v. Every*, 19-40 (La. App. 5 Cir. 5/23/19), 274 So.3d 770, 781, *writ denied*, 19-1048 (La. 10/1/19), 280 So.3d 159.

Nevertheless, the United States Supreme Court has held that evidence seized pursuant to a warrant based on less than probable cause need not be suppressed if the officers who executed the warrant believed it to be validly issued. *State v. Long*, 03-2592 (La. 9/9/04), 884 So.2d 1176, 1180, *cert. denied*, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005) (citing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). In *Leon*, the Supreme Court reasoned that the good faith of an officer in the execution of a warrant signed by a neutral magistrate should be enough for the evidence obtained as a result of the search to be admissible. *Id*. The *Leon* Court expressed a strong preference for warrants over warrantless searches by allowing evidence seized in constitutionally questionable searches to be admissible into evidence if the officers were relying on a validly issued warrant. *Id*. Additionally, the Court enumerated four exceptions where suppression is an appropriate remedy for a search conducted pursuant to a warrant: (1) the affiant misled the magistrate by including in the affidavit misleading statements which the affiant knew were false, or would know were false but for a reckless disregard for the truth; (2) the magistrate abandoned his neutral and detached role; (3) the affiant was so lacking of indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was

10

deficient and could not be presumed valid. *Long*, 884 So.2d at 1181 (citing *Leon*, 468 U.S. 914-915, 104 S.Ct. at 3416).

An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving by a preponderance of the evidence that the affidavit contains representations that are false. *See State v. Brown*, 18-1999 (La. 9/30/21), 330 So.3d 199, 252-53, *cert. denied*, --- U.S. ---, 142 S.Ct. 1702, 212 L.Ed.2d 596 (2022). Once the defendant has shown that the affidavit contains false statements, the burden shifts to the State to prove the veracity of the allegations in the affidavit. *Id*. If it is determined that the affidavit contains misrepresentations, the court must decide whether they were intentional. *Id*. For an affidavit to make a material and intentional misrepresentation to a magistrate constitutes a fraud upon the court and will result in the invalidation of the warrant and suppression of the items seized. *State v. Byrd*, 568 So.2d 554, 559 (La. 1990). However, if the misrepresentations or omissions were inadvertent, negligent, or were included without an intent to deceive, the correct procedure is for the warrant to be retested for probable cause after supplying that which was omitted or striking that which was misrepresented. *State v. Casey*, 99-23 (La. 1/26/00), 775 So.2d 1022, 1029, *cert. denied*, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).

Here, the affidavit of the search warrant provides, in pertinent part:

> **THE REASONS AND FACTS FOR THIS REQUEST OF THIS SEARCH WARRANT ARE:**
>
> In June/July 2022, Detective David Biondolillo and Detective Christopher Cade, Jefferson Parish Narcotics Division assigned to DEA/HIDT A Task Force, received information from a cooperating defendant (hereinafter the CD) regarding Billy LAMPTON, who the CD positively identified as a multiple ounce to kilogram quantity fentanyl source of supply. Information regarding LAMPTON and other subjects provided by the CD was corroborated through Detective Cade's and Biondolillo's investigation. The investigation included multiple federal wiretaps.

On September 2, 2022, while Detective Cade, Biondolillo, and Powe were conducting surveillance of LAMPTON at his apartment located at 3800 Grandlake Boulevard, Apartment L-104, Kenner, Louisiana. During the surveillance, at approximately 11:15 a.m., Detective Powe observed LAMPTON exit apartment L-104 and walk towards the dumspters [sic]. It should be noted that at approximately 10:30 a.m., Detective Biondolillo witnessed IV Waste Management empty the dumspters [sic] and no one else went to the dumpster area after they were emptied. Detective Cade then retrieved the only trash that was in the container, which Detective Biondolillo positively identified as the trash that Lampton carried to the dumpster.

Upon searching the trash, within a grocery bag tied up in the bag Detectives Cade and Biondolillo located three empty packages used for kilograms. Furthermore, upon opening the bag, detectives smelled a pungent odor immediately recognized to be consistent with the odor of heroin/fentanyl. Based on the information obtained through the investigation and the evidence recovered via trash pull[ed] Detectives Biondolillo and Cade are requesting the issuance of a search warrant for the residence of 3800 Grandlake Boulevard, Apartment L-104, Kenner, Louisiana.

**It is based on the above probable cause that Affiant requests that the court will grant a warrant for the purpose of searching the above-described location and curtilage for the above-described items. Due to the fact illegal narcotics are easily and commonly hidden on someone's person, Affiant further requests the court will grant officers the right to search "all persons" found at or inside the location, curtilage, and inside any vehicles. Affiant also requests that the court will grant said warrant to be executed during the daytime, nighttime, weekends, and/or holidays.** [Emphasis in original.]

After reviewing the affidavit, we find there are sufficient facts within its four corners to establish probable cause for issuing the warrant to search Lampton's residence—even if we were to excise the information referencing the CI's identification of Lampton and the statement regarding the federal wiretaps. Even if the detective's use of a single photo was "suggestive" as argued by Lampton, there was no substantial likelihood of misidentification; the CI knew him. Also, Biondolillo's investigation corroborated the CI's identification of Lampton.

12

Although Lampton contends that Biondolillo falsely swore in his affidavit regarding the federal wiretaps based on his testimony that Lampton's name was not heard, nor did he speak, during any of the recordings, we disagree. We find no fabrication in Biondolillo's statement or that it was included in the affidavit to falsely mislead the magistrate. Instead, we find that it was merely a statement made regarding a broader investigation of criminal activity that included the wiretaps, not that the investigation of Lampton was based solely on the wiretaps.

Although Lampton argues the search warrant affidavit states the apartment the officers were surveilling belonged to him without supplying any corroborating information that he lived there, the affidavit clearly states that the officers observed Lampton exit the apartment, throw a bag containing drug paraphernalia into a nearby empty dumpster, and then return to the same apartment. Additionally, Biondolillo testified at the hearing that, once Lampton was read his *Miranda* rights while in the parking lot, he provided officers with a key to the apartment and that they relocated there. The district court obviously believed Biondolillo's testimony.[10]

As to Lampton's contention that because fentanyl is odorless, Biondolillo's statement in his affidavit regarding the officers recognizing the odor of fentanyl when they opened the discarded garbage bag is false, we note that what the affidavit actually provides is that the smell was recognized by officers "to be consistent with the odor of heroin/fentanyl." We find this statement does not constitute a false misrepresentation nor was were made with an intent to mislead the magistrate.

---

[10] When a trial court makes findings of fact based on the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. *State v. Thompson*, 11-915 (La. 5/8/12), 93 So.3d 553, 563. *See also State v. Overstreet*, 18-380 (La. App. 5 Cir. 12/27/18), 263 So.3d 1241, 1248, *writ denied*, 19-235 (La. 4/29/19), 268 So.3d 1033.

Even if we were to excise the allegedly false statements and were to retest the affidavit, we find that it establishes probable cause for the search warrant in this case. Specifically, the affidavit establishes that during surveillance of Lampton's residence, officers saw Lampton exit the apartment and throw a trash bag into a dumpster, which they had just observed being emptied by IV Waste. Upon retrieving the bag from the dumpster, officers discovered three empty wrappers used for kilos packaging, and immediately recognized a smell consistent with the odor of heroin/fentanyl. We find that the information officers obtained through the task force's investigation and the surveillance of Lampton's residence, as well as the evidence recovered from the bag Lampton threw into the dumpster, provided sufficient evidence to determine that there was probable cause for the issuance of a warrant for the search of Lampton's residence.

Based on the totality of the circumstances, we find the district court did not abuse its discretion in denying Lampton's motion to suppress evidence that was seized pursuant to a warrant.

**Motion to Produce Impeaching Evidence Regarding the CI**

In his writ application, while Lampton asserts as an "issue presented," that the trial court failed to order the State to produce statutorily dictated impeachment information regarding the "non-testifying cooperating defendant," he fails to brief the issue. Uniform Rules–Courts of Appeal, Rule 2–12.4(B)(4) provides that a reviewing court may consider as abandoned any assignment of error or issue for review which has not been briefed, we consider this issue abandoned. *See also State v. Fink*, 20-139 (La. App. 5 Cir. 6/1/20), 296 So.3d 1270, 1277 n.6, where this Court stated:

> We recognize that U.R.C.A. Rule 2–12.4 relates to appeal briefs; however, U.R.C.A. Rule 4–8 specifically provides: "The rules of the court pertaining to appeals and not conflicting with Rules specifically pertaining to application for writs, when applicable and insofar as

14

> practicable, shall govern applications and the disposition thereof."

*Id.* As Lampton has failed to brief the issue concerning impeachment information regarding the CI, we consider this issue abandoned.

For the forgoing reasons, Lampton's writ application is denied.

Gretna, Louisiana, this 22nd day of October, 2024.

**SMC**
**FHW**
**TSM**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **10/22/2024** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-K-444**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable June B. Darensburg (DISTRICT JUDGE)
Thomas J. Butler (Respondent)               C. Gary Wainwright (Relator)
                                            Darren A. Allemand (Respondent)

### MAILED

Honorable Paul D. Connick, Jr.
(Respondent)
District Attorney
Twenty-Fourth Judicial District
200 Derbigny Street
Gretna, LA 70053